UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

XAVIER WILLIAMS,                            **MEMORANDUM AND ORDER**
MICHAEL WILLIAMS,
ELIJAH BOBBY WILLIAMS
                                           00 Cr. 1008 (NRB)
                    Petitioners,           09 Civ. 2179 (NRB)
                                           (Xavier Williams)
              v.                           09 Civ. 3493 (NRB)
                                           (Michael Williams)
UNITED STATES OF AMERICA,                  09 Civ. 2535 (NRB)
                                           (Elijah Bobby Williams)
                    Respondent.

----------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


        Xavier   Williams   ("Xavier"),   Elijah   Bobby   Williams

("Bobby"),   and   Michael   Williams   ("Michael")   (collectively

"petitioners")  all  move  to  vacate,  set  aside,  or  correct  their

respective  sentences  pursuant  to  28  U.S.C.  §  2255.   Each  of  the

petitioners  sets  forth  numerous  claims  of  ineffective  assistance

by  his  respective  counsel  at  trial  and  at  sentencing.   For  the

reasons  that  follow,  all  three  petitions  are  denied.


                        <u>**BACKGROUND**</u>[1]

---

[1] Unless otherwise indicated, the following facts are drawn from the Petitions
(Xavier ("XW Mem."), Michael ("MW Mem."), and Bobby ("BW Mem.")), the
Government's Memorandum in Response to the Petitions ("Gov. Mem."), the
Second Circuit decision in *United States v. Williams*, 506 F.3d 151 (2d Cir.
2007), the transcript of Bobby and Michael's trial ("EBW Tr."), and the
transcript of Xavier's trial ("XW Tr.").

All three petitioners were charged with operating a violent criminal organization that enriched its members by trafficking in cocaine and cocaine base in New York and Pennsylvania. Initially, and indeed until shortly before the trial of Bobby and Michael, the government sought the death penalty against all three defendants for their roles in a February 1996 triple homicide in Pennsylvania.  After Xavier's counsel persuaded the government not to seek the death penalty against him, the cases were severed.  Bobby and Michael were thus tried separately from Xavier on a superseding indictment that charged fifteen counts: racketeering, in violation of 18 U.S.C. § 1962(c) (Count One); racketeering conspiracy, in violation of 18 U.S.C. § 1962(d) (Count Two); conspiracy to commit murder in aid of racketeering activity, in violation of 18 U.S.C. § 1959(a)(5) (Counts Three and Four)[2]; murder in aid of racketeering activity, in violation of 18 U.S.C. §§ 2, 1959(a)(1) (Counts Five through Seven); conspiracy to distribute narcotics, in violation of 21 U.S.C. § 846 (Count Eight); murder while engaged in a narcotics conspiracy, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 848(e)(1)(A) (Counts Nine through Eleven); use of a firearm during and in relation to a drug trafficking crime or crime of violence (specifically, murder), in violation of 18 U.S.C. §§ 2,

---

[2] Count Three charged Michael alone.

924(j) (Counts Twelve through Fourteen); and conspiracy to launder money derived from narcotics trafficking, in violation of 18 U.S.C. § 1956(h) (Count Fifteen).

Because all three petitioners were initially indicted for death-eligible offenses, each was appointed two counsel, including one "learned in the law of capital cases." 18 U.S.C. § 3005.

On May 6, 2005, after a six-week trial, a jury returned separate verdicts for Bobby and Michael, finding Bobby guilty on all counts except Counts Three and Four, and Michael guilty on all counts except Count Four. The jury determined that neither Bobby nor Michael should receive the death penalty, and each was subsequently sentenced to life imprisonment on August 17, 2005.

After the conclusion of Bobby and Michael's trial, Xavier was tried separately on a superseding indictment charging fourteen counts that mirrored Bobby's and Michael's indictment through Count Thirteen, omitted one of the firearm counts, and charged the money laundering count as Count Fourteen instead of Count Fifteen. On July 6, 2005, after the close of the government's case at trial, this Court dismissed Counts Five, Six, Seven, Nine, Ten, Eleven, and Twelve upon the government's motion. As a result, Xavier ultimately faced seven counts in a

3

redacted Superseding Indictment, which charged: racketeering, in violation of 18 U.S.C. § 1962(c) (Count One); racketeering conspiracy, in violation of 18 U.S.C. § 1962(d) (Count Two); conspiracy to commit murder in aid of racketeering activity, in violation of 18 U.S.C. § 1959(a)(5) (Counts Three and Four); conspiracy to distribute and possess with intent to distribute narcotics, in violation of 21 U.S.C. § 846 (Count Five); use of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c) and 2 (Count Six); and conspiracy to launder money derived from narcotics trafficking, in violation of 18 U.S.C. § 1956(h) (Count Seven).   On July 8, 2005, after a three-week trial, the jury found Xavier guilty on all remaining counts except Count Four.   He was sentenced to life imprisonment on October 11, 2005.

On October 23, 2007 the Second Circuit affirmed Xavier's, Michael's and Bobby's convictions and sentences. *United States v. Williams*, No. 05-6036-cr, 2007 WL 3105760 (2d Cir. Oct. 23, 2007)(summary order); *United States v. Williams*, 506 F.3d 151 (2d Cir. 2007).   Xavier and Bobby filed petitions for a writ of certiorari with the United States Supreme Court in January 2008. Both petitions were denied on February 19, 2008.   *Williams v. United States*, 552 U.S. 1223 (2008)(Xavier); *Williams v. United States*, 552 U.S. 1224 (2008)(Bobby).   Michael filed a petition

4

for writ of certiorari to the Supreme Court in February 2008. His petition was denied on March 24, 2008. *Williams v. United States*, 552 U.S. 1290 (2008).

## DISCUSSION

### I.   Standard of Review

A claim of ineffective assistance of counsel is analyzed under the two-part standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a "defendant claiming ineffective assistance must (1) demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms,' and (2) 'affirmatively prove prejudice' arising from counsel's allegedly deficient representation." *United States v. Cohen*, 427 F.3d 164, 167 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 688, 693). "[T]he burden rests on the accused to demonstrate a constitutional violation." *United States v. Cronic*, 466 U.S. 648, 658 (1984).

To satisfy the "performance" prong, "the record must demonstrate that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Wilson v. Mazzuca*, 570 F.3d 490, 502 (2d Cir. 2009) (quoting *Strickland*, 466 U.S. at 687) (internal quotation

5

marks omitted).   In carrying out this inquiry, "[j]udicial scrutiny of counsel's performance must be highly deferential" and the court should make every effort "to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Indeed, the court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Brown v. Greene*, 577 F.3d 107, 110 (2d Cir. 2009) (quoting *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001)) (internal quotation marks omitted).   Counsel's omissions fall outside this range of reasonableness only if they "cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness." *Eze v. Senkowski*, 321 F.3d 110, 112 (2d Cir. 2003).

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.   "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*; *see also Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010); *Mazzuca*, 570 F.3d at 502; *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001).

In considering an ineffective assistance of counsel claim, the district court has discretion to determine whether an evidentiary hearing is required.   28 U.S.C. § 2255; *Pham v. United States*, 317 F.3d 178, 184 (2d Cir. 2003).   The Second Circuit has stated that:

> To warrant a hearing on an ineffective assistance of counsel claim, the defendant need establish only that he has a "plausible" claim of ineffective assistance of counsel, not that "he will necessarily succeed on the claim." *Armienti v. United States*, 234 F.3d 820, 823 (2d Cir. 2000). (quoting *United States v. Tarricone*, 996 F.2d 1414, 1418 (2d Cir. 1993)).   Rule 4(b) of the Rules Governing § 2255 Proceedings further provides that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing § 2255 Proceedings for the United States District Courts, Rule 4(b), 281 U.S.C. foll. § 2255.

*Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009).

## II.  Analysis

Each petitioner raises more than ten ineffective assistance of counsel claims.   Before discussing the individual claims of ineffective assistance, it is worth noting that it is hard to imagine a case where more effective assistance was provided at public expense.   Each defendant was appointed two counsel, one each from the capital case panel who met the statutory requirement that they be "learned" in the law applicable to

7

death penalty cases.   Over one and a half million dollars of public funds were expended in their defense, not only on counsel, but on jury consultants, psychiatrists, psychologists, investigators, experts and mitigation specialists.   Finally, as this judge can attest, all counsel represented these defendants with vigor, intelligence and dedication.   Quite simply, these defendants not only did not receive ineffective assistance, they received highly effective assistance in the finest traditions of the American justice system.   Nonetheless, we consider each claim in turn.[3]

### 1.   Plea Negotiations

#### a. Legal Standard

A petitioner's claim that defense counsel was ineffective in the context of plea negotiations is evaluated under the two-

_____

[3] Before addressing petitioners' claims, we note that the government has argued that both Bobby and Michael's petitions are time-barred because they were filed more than a year after their convictions became final.   Gov. Mem. at 28, n.5.   Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a defendant has one year from the date the conviction becomes final to file his petition.   28 U.S.C. § 2255.   The Supreme Court has ruled that a conviction "becomes final" when the Court "affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States,* 537 U.S. 522, 527 (2003)).   Bobby's conviction became final on February 19, 2008 and his petition was filed on March 19, 2009; Michael's conviction became final on March 24, 2008 and his petition was filed on April 7, 2009. Gov. Mem. at 28, n.5.   But, both Michael and Bobby's petitions were sent from prison, and received by this Court's Pro Se office, within the one-year period (Bobby's petition was received by the Pro Se office on February 13, 2009 and Michael's was received on March 16, 2009). *See Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001) (date of filing for habeas petitions is the date petition is delivered to prison officials under the so-called "prison mailbox rule.") Thus, the petitions are timely.

pronged *Strickland* test.  *See Pham*, 317 F.3d at 182.  "Defense counsel have a constitutional duty to give their clients professional advice on the crucial decision of whether to accept a plea offer from the government."  *Id.*  "Even if there might be circumstances where defense counsel need not render advice as to acceptance of a plea bargain, there can be no doubt that counsel must always communicate to the defendant the terms of any plea bargain offered by the prosecution."  *Id.* (internal quotation marks and citations omitted).  *See also Roccisano v. Menifee*, 293 F.3d 52, 60 (2d Cir. 2002) ("[D]efense counsel in a criminal case must advise his client of the merits of the government's case, of what plea counsel recommends, and of the likely results of a trial[.]").

"With respect to a claim that counsel's ineffective assistance led to the rejection of a plea offer that, properly informed, would have been accepted, a petitioner seeking a hearing must proffer arguably credible evidence of a *prima facie* case that, but for counsel's improper advice, the petitioner would have accepted the plea offer."  *Puglisi v. United States*, 586 F.3d 209, 215 (2d Cir. 2009).  "This may be accomplished through the petitioner's own sworn statement if it is credible in light of all the relevant circumstances . . . but 'a judge is well within his discretion in denying a petition when the

supporting affidavit is insufficient on its face to warrant a hearing.'" *Id.* (quoting *Dalli v. United States*, 491 F.2d 758, 760 (2d Cir. 1974)); *see also Purdy v. Zeldes*, 337 F.3d 253, 259 (2d Cir. 2003).

The Second Circuit has stated that a petitioner's "self-serving post-conviction statement" that he would have pled had he received proper advice of counsel is usually not enough to satisfy the prejudice prong of the *Strickland* test. *See United States v. Gordon,* 156 F.3d 376, 380-81 (2d Cir. 1998). Rather, a petitioner's statement must be accompanied by some other "objective evidence" that he likely would have pled differently. *Id.* The Second Circuit has recognized a "significant sentencing disparity" as an example of "objective evidence" that can warrant a hearing. *See Puglisi*, 586 F.3d at 216; *see also Pham*, 317 F.3d at 184.

### b. Discussion

In his September 4, 2009 affidavit, Xavier contends that his counsel "did not discuss plea bargaining with [him] or even attempt to negotiate a plea bargain with the government." Sept. 4, 2009 Affidavit of Xavier Williams ("XW Aff.") at 1.   Xavier further contends that if counsel had discussed with him the "true risks of proceeding to trial versus pleading guilty, including the fact that [Xavier] would have received an

acceptance of responsibility reduction at the very least," he would have entered a guilty plea. *Id.* at 1. Finally, Xavier states that "[i]f counsel had presented a proposed plea bargain to [him], [he] would have entered a guilty plea to the indictment." *Id.*

For the reasons discussed below, we find that Xavier's claims that his counsel (1) did not attempt to negotiate a plea bargain, and (2) did not communicate any potential bargain to him lack credibility. We also find that his claims are inconsistent with statements in his November 26, 2010 affidavit submitted to this Court. As a result, we find that Xavier's affidavits are "insufficient on [their] face to warrant a hearing." *Puglisi*, 586 F.3d at 215.

In an affidavit submitted to this Court on November 2, 2010, Xavier's counsel David Stern stated that he (and his co-counsel Michael Young) met with Assistant United States Attorneys ("AUSAs") Glen McGorty, Helen Cantwell, Richard Daddario, and Sharon McCarthy in May 2005 "in an effort to work out a plea acceptable to both sides." Nov. 2, 2010 Affirmation of David Stern ("Stern Aff."), at 1. Stern further stated that in the May 2005 meeting, the government offered a plea of thirty years imprisonment, and that after the meeting Stern and Young met with Xavier to discuss the plea offer. *Id.* According to

11

Stern, he and Young told Xavier "the terms of the government's offer" and "gave him [their] advice and answered his questions concerning the matter." *Id.* at 1-2. Stern states that Xavier "decided to reject the plea offer and to proceed to trial." *Id.* at 2.

Stern's affidavit is consistent with the affidavit of AUSA McGorty. In his affidavit, AUSA McGorty states that a meeting between the government and Xavier's counsel took place on or about May 24, 2005 and that "at that meeting the parties discussed a possible resolution of the case prior to trial." April 26, 2010 Affirmation by Glen G. McGorty ("McGorty Aff."), at 2. McGorty further states that after the May 2005 meeting, the government spoke with Xavier's counsel and was advised that Xavier "would not be pleading guilty pursuant to any agreement with the Government, and would be proceeding to trial." *Id.*

We find that Xavier's declarations lack credibility for the following reasons. First, Xavier's statement that Stern "did not even attempt to negotiate a plea bargain with the government" (XW Aff. at 1) is directly contradicted by the affidavits of both Stern and AUSA McGorty, both of which detail a meeting at which a potential plea was discussed.

12

Second, Xavier's statement in his September 24, 2009 affidavit that prior to trial Stern "did not discuss plea-bargaining with him" (*id.* at 1) is inconsistent with his own affirmation that when he "met with Mr. Stern regarding any type of plea discussion, [he] asked Mr. Stern to tell the government he was willing to take 20 to 25 years. Mr. Stern stated that the government would not consider anything less than 40 to 50 years." Nov. 26 2010 Response to David Stern's Affidavit ("XW Response"), at 1. Xavier's position is also logically inconsistent with counsel's extended, persistent, and successful efforts to persuade the government to reverse its decision to seek the death penalty if Xavier was convicted on death eligible charges.

Third, had Xavier pled guilty to the indictment in order to obtain acceptance of responsibility points, as he claims he would have (*see* XW Aff.), he would have faced a *mandatory life sentence* for pleading guilty to Counts Five, Six, and Seven of the Indictment, which charged him with murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1). As noted above, these counts were not dismissed until July 6, 2005, after the close of the government's case at trial. Thus, Xavier's statement that he would have pled guilty to the indictment is neither credible nor supported by "objective evidence" of a

13

"significant sentencing disparity." *Puglisi*, 586 F.3d at 216. Indeed, Xavier maintains that he was not involved with the murders and thus contends that he "would have entered a plea to the indictment without any involvement with murder or murder conspiracy if counsel would have negotiated such a deal." XW. Aff. at 3. However, that option was never available.

Fourth, even in his affirmation submitted in response to Stern's affidavit, Xavier does not state that he would have accepted an offer of thirty years; rather, he states that he told Stern to tell the government that he was willing to accept twenty-five years. Xavier's statement that "Mr. Stern stated that the government would not consider anything less than 40 to 50 years" (XW Reply Aff. at 1) is unsupported by anything in the record and lacks credibility under the circumstances.

Thus, while there is a disparity between the thirty year sentence that Stern stated the government offered and the life sentence that was ultimately imposed[4], such a disparity does not warrant a hearing in this case because, in light of all the relevant circumstances, we accept Stern's affidavit that he presented the government's position to Xavier and provided legal advice on the issue, and find that Xavier's affidavits lack

---

[4] We note that Xavier was 37 years old at the time of the plea offer and thus, had he accepted the offer, he would have been released from prison during his mid-sixties.

credibility.    It  is  simply  inconceivable  that  the  same experienced  lawyer  who  fought  against  the  death  penalty  would have  not  fulfilled  his  obligations  in  the  context  of  plea negotiations  once  the  death  penalty  was  off  the  table.

As  the  Second  Circuit  has  stated,  "[i]t  may  .  .  .  be perfectly  appropriate,  depending  upon  the  nature  of  the allegations,  for  the  district  court  to  proceed  by  requiring  that the  record  be  expanded  to  include  letters,  documentary  evidence, and,  in  an  appropriate  case,  even  affidavits."  *Chang v. United States*,  250  F.3d  79,  85-86  (2d  Cir.  2001).   Here,  where  we  have considered  affidavits  from  Xavier  and  AUSA  McGorty,  and  expanded the  record  by  requesting  an  affidavit  from  Xavier's  counsel,  we find  that  ruling  on  the  basis  of  the  affidavits  is  an appropriate  "middle  road  that  avoid[s]  the  delay,  the  needless expenditures  of  judicial  resources,  [and]  the  burden  on  trial counsel  and  the  government"  associated  with  a  full  hearing.   *Id.* at  86.   *See also Crisci v. United States*,  108  Fed.  Appx.  25,  27 (2d  Cir.  Aug.  31,  2004);  *see also Brown v. United States*,  03  CV 3909  (RJD),  03  CV  4371  (RJD),  2010  WL  2594040,  at  *12  ("A hearing  at  which  each  declarant  merely  reiterates  his  written submission  will  accomplish  nothing.").[5]

---

[5] We  are  mindful  of  the  Second  Circuit's  recent  decision  in  *Raysor v. United States*,  No.  09-3871,  2011  WL  3134459  (2d  Cir.  July  27,  2011),  in  which  the

15

## 2.    404(b) Limiting Charge

Federal Rule of Evidence 404(b) states in relevant part that "[e]vidence of other crimes, wrongs, or acts is not

---

Circuit vacated a district court's denial of a § 2255 motion and remanded for an evidentiary hearing on a petitioner's claim that his counsel provided ineffective assistance by failing to provide legal advice on whether to accept a plea offer from the government. In *Raysor*, the petitioner submitted an affidavit stating that his counsel did not provide "his ultimate opinion as to the wisdom of the plea nor did he give any suggestions as to how to deal with the government's plea offer." *Raysor*, 2011 WL 3134459, at *2. In response, the government submitted an affirmation from the petitioner's counsel, which stated: "I conveyed the government offer of 29 years to the defendant. The defendant refused the offer." *Id.*

In holding that an evidentiary hearing was warranted, the Circuit found that, with regard to the prejudice prong of the *Strickland* test, the petitioner's sworn statement that he would have pled guilty and the disparity between the sentence offered (29 years) and that actually received (multiple life sentences) were, together, sufficient to establish a *prima facie* case that, but for counsel's improper advice, the petitioner would have pled guilty. After noting that the district court did not address the performance prong of the *Strickland* test, the Circuit found that petitioner's counsel's statement that he conveyed the plea offer to the government was "hardly equal to the 'detailed affidavit from trial counsel credibly describing the circumstances concerning appellant's failure to testify' that we found sufficient to deny a full evidentiary hearing and to support dismissal of the § 2255 in *Chang*." *Id.* at 12. Thus, the Circuit held, an evidentiary hearing was necessary.

The Circuit's decision in *Raysor* does not change the framework under which courts determine whether or not to conduct a hearing and does not alter the conclusion that a hearing is unnecessary in this case. Unlike the district court in *Raysor*, we have found, for the reasons stated above, that Xavier's affidavits lack credibility. Unlike the statement submitted by petitioner's counsel in *Raysor*, Xavier's counsel's affidavit states that both of Xavier's counsel provided Xavier with advice and answered Xavier's questions on the plea offer. Unlike in *Raysor*, where the statements of petitioner and counsel on the issue of whether counsel provided legal advice on the plea offer were apparently not inconsistent (*i.e.* counsel's statement did not address the issue), the statements here are wholly inconsistent. And, unlike counsel in *Raysor*, who the Circuit noted was disqualified by the district court (just two months after petitioner rejected the plea offer) for a conflict of interest resulting from his prior representation of a co-defendant, Xavier's counsel represented him vigorously throughout his case and had (just two months before petitioner rejected the plea offer) successfully persuaded the Department of Justice not to seek the death penalty. In sum, Xavier has not established that he has a plausible claim that his counsel provided ineffective assistance and thus no evidentiary hearing is required.

16

admissible to prove the character of a person . . . .  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ."  Bobby and Xavier each claim that their respective counsel provided ineffective assistance by failing to request a limiting instruction under Rule 404(b), either during the introduction of evidence or at the conclusion of trial.

### a. Bobby

Bobby contends that "[n]o 404(b) instruction was ever given to the jury" and that, as a result, he "was seriously prejudiced by counsel's error . . . ."  BW Mem. at 6.  Bobby's claim wholly lacks merit because this Court did in fact provide the jury with a limiting instruction, which stated the following:

> You have heard evidence that on earlier occasions, the defendants engaged in conduct that was similar in nature to the conduct charged in the Indictment.  Let me remind you that the defendants are only on trial for committing the acts alleged in the Indictment. Accordingly, you may not consider this evidence of similar acts as a substitute for proof that the defendants committed the crime charged.  Nor may you consider this evidence as proof that the defendants have a criminal personality or bad character.  This evidence was admitted for a more limited purpose, and you may consider it for that purpose only.
>
> If you determine that the defendants committed the acts charged in the Indictment and the similar acts as well, then you may but need not draw an inference that

in doing the acts charged in the Indictment, the
defendants acted knowingly and intentionally and not
because of some mistake, accident, or other reasons.

Additionally, if you find that the defendants engaged
in similar acts with other persons alleged to be
members of the enterprise or conspiracies charged in
the Indictment, you may consider those acts in
deciding whether the conspiracy existed. If you find
that the defendants engaged in the earlier acts and if
you find that the earlier acts had sufficiently
similar characteristics to those charged in the
Indictment, then you may but need not infer that the
acts charged in this Indictment and the earlier
conduct were part of a common plan or scheme committed
by the defendants.

Nevertheless, the evidence of similar conduct is to be
considered by you only on the issues I have just
described and not on any other issues. You may not
consider such evidence for any other purposes.
Specifically, you may not consider it as evidence that
the defendant you are considering is of bad character
or has a propensity to commit a crime.

EBW Tr. at 3116-3117.

This charge, which closely tracks Judge Sand's *Modern
Federal Jury Instructions* (1 L. Sand, *et al.*, *Modern Federal
Jury Instructions-Criminal* at 5-71-76 (Instructions 5-26, 5-26)
(2010)), was sufficient. In any event, a defendant is not
entitled to have the exact language he may want read to the
jury, so long as the charge actually given properly addresses
the necessary legal issues. *See, e.g., United States v. Russo*,
74 F.3d 1383, 1393 (2d Cir. 1996).[6] Thus, defense counsel's

---

[6] *See also United States v. Smith*, 198 F.3d 377, 386 (2d Cir. 1999) (stating
that, in the context of a direct appeal, the court "will not find reversible

decision not to object to the limiting instruction was not unreasonable and did not cause Bobby prejudice.

### b. Xavier

Xavier also contends that his counsel provided ineffective assistance by failing to obtain a 404(b) limiting instruction. XW. Mem. at 7-13. Xavier's claim is without merit because Xavier's counsel actually requested that this Court *not* issue a limiting instruction. *See* XW Tr. at 2247.[7] As the Second Circuit stated in *Strickland*, "[t]here are countless ways to provide effective assistance in any given case." *Strickland*, 466 U.S. at 689. Here, in light of the substantial evidence against Xavier, counsel's decision to not seek a limiting instruction (and thus to not draw further attention to damaging testimony) falls "within the wide range of reasonable professional assistance." *Id*.[8]

### 3. Retroactive Misjoinder

### a. Legal Standard

---

error unless a charge either failed to inform the jury adequately of the law or misled the jury as to the correct legal rule").

[7] Indeed, Xavier originally argued on appeal that this Court had erred by failing to provide a limiting instruction, but then sought to withdraw that argument.

[8] In addition, we note that Xavier's counsel objected to 404(b) evidence in a June 17, 2005 letter to this Court, (*see* Xavier's Traverse to Government's Response to 2255 Motion at 5, Ex. 1).

"The term 'retroactive misjoinder' refers to circumstances in which the 'joinder of multiple counts was proper initially, but later developments-such as a district court's dismissal of some counts for lack of evidence or an appellate court's reversal of less than all convictions-render the initial joinder improper.'" *United States v. Hamilton*, 334 F.3d 170, 181 (2d Cir. 2003)(quoting *United States v. Jones*, 16 F.3d 487, 493 (2d Cir. 1994). "In order to be entitled to a new trial on the ground of retroactive misjoinder, a defendant 'must show compelling prejudice.' Such 'compelling prejudice' may be found where there is '[p]rejudicial spillover from evidence used to obtain a conviction subsequently reversed on appeal.' The concept of prejudicial spillover . . . requires an assessment of the likelihood that the jury, in considering one particular count or defendant, was affected by evidence that was relevant only to a different count or defendant." *Id.* at 181-82 (internal citations omitted). There are three factors considered in analyzing a prejudicial spillover claim:

> (1) whether the evidence introduced in support of the vacated count was of such an inflammatory nature that it would have tended to incite or arouse the jury into convicting the defendant on the remaining counts, (2) whether the dismissed count and the remaining counts were similar, and (3) whether the government's evidence on the remaining counts was weak or strong.

*Id.* (internal quotation marks omitted).

### b. Discussion

Although Xavier was originally charged with a fourteen-count indictment, the government moved to dismiss seven counts relating to a triple homicide after the completion of its direct case. Xavier argues that he was prejudiced by the presentation of evidence related to the triple homicide, and that his lawyer should have moved for a new trial based on retroactive misjoinder. XW. Mem. at 13-14.

Xavier's ineffective assistance claim is without merit because, as the government notes in its brief (Gov. Mem. at 46-47), even without the triple homicide charges, the evidence in question would have been presented to the jury in the context of the racketeering conspiracy charged in Count One, as Predicate Act Three related to the triple homicide. *See, e.g.,* *U.S. v. Morales*, 185 F.3d 74, 83 (2d Cir. 1999) (rejecting retroactive misjoinder claim where, *inter alia*, much of the evidence at issue "would have been admissible even if the reversed counts had never been charged."). Moreover, the jury actually found Xavier not guilty of Count Four, the only remaining substantive count relating to the triple homicide, and found that the government had not proved Predicate Act Three of Count One. As the Second Circuit has stated, "where the record indicates that the jury was able to distinguish between counts or between

21

defendants, and to assess separately the evidence pertinent to each, we have found no basis for concluding that a new trial was warranted because of prejudicial spillover. The absence of such spillover is most readily inferable where the jury has convicted a defendant on some counts but not on others." *Hamilton*, 334 F.3d at 183. *See also, e.g., United States v. Ivezaj*, 336 Fed. Appx. 6, 8-9 (2d Cir. 2009) (summary order)(rejecting retroactive misjoinder claim where jury found one of charged racketeering acts unproven). In sum, Xavier cannot show the "compelling prejudice" required for a new trial on the grounds of retroactive misjoinder.[9] Thus, Xavier's counsel's decision not to move for a new trial on those grounds was not unreasonable under *Strickland*.

### 4. Double Jeopardy

#### a. Legal Standard

An indictment is multiplicitious, and thus in violation of the Double Jeopardy Clause of the Fifth Amendment, "when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed." *United States v. Chacko*, 169 F.3d 140, 145 (2d Cir.

---

[9] We also note that, having presided over the trial, the third factor in the retroactive joinder analysis - *i.e.*, whether the government's evidence on the remaining counts was weak or strong - weighs heavily against Xavier's claim.

1999).   In order to determine whether two offenses charged separately in the indictment are in fact one offense charged twice, courts apply the *Blockburger* "same elements" test.   *See id.* (citing *Blockburger v. United States*, 284 U.S. 299 (1932), *United States v. Dixon*, 509 U.S. 688 (1993)).   The *Blockburger* test considers "whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." *Dixon*, 509 U.S. at 696.

### b. Discussion

Xavier, Michael, and Bobby all claim that their respective counsel provided ineffective assistance by failing to move for dismissal of the racketeering conspiracy count (Count Two) or the murder conspiracy count (Count Three) on double jeopardy grounds.   The petitioners argue that both counts were based on the same murder conspiracy and were thus multiplicitous.   XW Mem. at 15-18; MW Mem. at 5-8 BW Mem. at 7-9.

Here, the Second Circuit's recent decision in *United States v. Basciano*, 599 F.3d 184 (2d Cir. 2010) is on point.   In *Basciano*, the Circuit held that a defendant may be prosecuted for both racketeering conspiracy in violation of 18 U.S.C. § 1962(d) and conspiracy to commit murder in aid of racketeering

23

activity in violation of 18 U.S.C. § 1959(a)(5).  *Id.* at 197-99.

Applying the test set forth in *Blockburger* and reaffirmed in

*Dixon*, the Court held that each of the two offenses contains an

element not contained in the other, thus satisfying the Double

Jeopardy inquiry.  *Basciano*, 599 F.3d at 197-98.  The court

noted that "the critical double jeopardy inquiry is not factual,

i.e., whether the same conduct is at issue in charges brought

under different statutes, but legal, i.e., 'whether the offense

- in the legal sense, as defined by Congress - complained of in

one count is the same as that charged in another.'"  *Id.* at 197

(quoting *Blockburger*, 284 U.S. at 304).  Since racketeering

conspiracy under 18 U.S.C. § 1962(d) does not require proof of

an agreement on a violent crime nor a specific purpose to

maintain or increase one's position in a racketeering

enterprise, and since conspiracy to commit murder in aid of

racketeering activity under 18 U.S.C. § 1959(a)(5) does not

require a pattern of racketeering nor an agreement to conduct

the affairs of the enterprise through such a pattern, a

defendant may be prosecuted under both statutes without

violating the Double Jeopardy Clause.  *Id.* at 199.

Thus, there was no double jeopardy violation with respect

to counts two and three for any of the three petitioners, and it

was not ineffective assistance for any of the petitioners'
counsel to not move for dismissal under such a theory.[10]

_____

[10] After raising a double jeopardy challenge in his original petition (but not
identifying particular counts in the indictment), Michael challenges
virtually the entirety of his indictment in his reply brief. Indeed, Michael
contends that there were 49 separate double jeopardy violations in his 15-
count indictment. Michael Williams' Reply Br. in Response to the
Government[']s Opp'n Mem. on §2255. ("MW Reply") at 10. Michael's claims
are without merit because the challenged counts satisfy the *Blockburger* "same
elements" test. For example, Michael's contention that counts two and three
violate the Double Jeopardy clause fail for the reasons set forth above; his
arguments concerning counts one and two (the substantive RICO offense and the
RICO conspiracy) and counts one and three (the substantive RICO offense and
the underlying violent crime) also are without merit. *See United States v.
Polanco*, 145 F.3d 536, 542 (2d Cir.1998) ("It is well settled that Congress
sought to permit cumulative sentences for a RICO conviction and the predicate
offenses upon which the RICO violation is premised.... [T]he government may
prosecute a defendant both under RICO for engaging in a pattern of
racketeering activity and also under § 1959 for violent crimes intended to
maintain or increase the defendant's position in the RICO enterprise."
(citation and internal quotation marks omitted)); *United States v. Benevento*,
836 F.2d 60, 73 (2d Cir. 1987) *abrogated on other grounds by United States v.
Indelicato*, 865 F.2d 1370 (2d Cir. 1989) ("The significant distinctions
between the proof required to establish the RICO conspiracy and the
underlying substantive RICO offense belie [defendant's] claim that
convictions under both the substantive and conspiracy counts violate the
double jeopardy clause.").

Similarly, Michael claims that counts four, five, nine and twelve were all
duplicative. Count four (on which Michael was acquitted) charged murder
conspiracy in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5);
count five charged murder in aid of racketeering, in violation of 18 U.S.C.
§ 1959(a)(1) and (2); count nine charged murder, while engaged in the
conspiracy to distribute 50 grams and more of cocaine base and five kilograms
and more of cocaine, in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C.
§§ 2; count twelve charged the use and carrying of a firearm during and in
relation to the murder charged in count five, in violation of 18 U.S.C. §§
924(j) and 2. Michael's claims on all of these counts fail the *Blockburger*
test because each offense contains at least one element not contained in the
other. For example, an element of the offense charged in count nine (but not
in the other challenged counts) was that Michael was engaged in a conspiracy
to distribute narcotics. The same analysis applies to Michael's remaining
Double Jeopardy challenges, which we have considered and find to be without
merit.

### 5.    Effective Cross-Examination

All three petitioners claim that their respective counsel was ineffective during cross-examination of certain witnesses. Xavier faults his counsel for failing to use a transcript from a previous trial to impeach a witness (XW Mem. at 18), while Michael and Bobby claim their respective counsel failed to show that a number of witnesses perjured themselves and failed to locate witnesses for rebuttal or otherwise.  MW Mem. at 10; BW Mem. at 10.

It is well accepted that decisions by counsel "about 'whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature' and generally will not support an ineffective assistance claim." *Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002) (quoting *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987))).  *See also Eze v. Senkowski*, 321 F.3d 110, 131 (2d Cir. 2003) (noting the "significant deference we accord a trial counsel's decision how to conduct cross examination"); *United*

---

In sum, counsel was not ineffective in failing to raise these arguments. In any event, Michael was not prejudiced because, as discussed above, his conviction on Counts Five through Seven resulted in mandatory life sentences.

*States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998) ("[T]he conduct of examination and cross-examination is entrusted to the judgment of the lawyer, and an appellate court on a cold record should not second-guess such decisions unless there is no strategic or tactical justification.").

Having presided over the trials of all three petitioners, this Court observed first-hand the careful and conscientious cross-examinations conducted by all defense counsel.  In each case, counsel, utilizing their considerable experience, took full advantage of the opportunities contained in the § 3500 material provided by the government. Strategic choices made by counsel in connection with such efforts do not rise to the level of ineffective assistance.  And, at bottom, none of the issues raised by petitioners in the context of cross-examination raise a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.[11]

## 6.  **Right to Testify**

Xavier and Michael claim that their respective counsel did not inform them of their right to testify or sufficiently impart

---

[11] In an argument somewhat related to the ineffective cross-examination claims, Bobby contends that his counsel was ineffective for not moving to sequester a government witness (Detective Tallent). *See* BW Mem. at 14.  This claim fails both prongs of the *Strickland* test.

to them that the ultimate decision as to whether to testify or not belonged to them and not counsel, and that this constituted ineffective assistance of counsel.

### a. Legal Standard

A defendant has a constitutional right to testify on his own behalf. *Rock v. Arkansas*, 483 U.S. 44, 49 (1987); *Rega v. United States*, 263 F.3d 18, 21 (2d Cir. 2001). Defense counsel is obligated to inform a defendant of this right and to offer advice on whether it should be exercised, but the defendant is ultimately the one who decides on its waiver. *Brown v. Artuz*, 124 F.3d 73, 76 (2d Cir. 1997).

A petitioner's claim that his counsel denied him the right to testify is subject to the ineffective assistance of counsel standard set forth in *Strickland*. That is, against a "strong presumption" that counsel's conduct was reasonable, a petitioner must show both unreasonable performance and prejudice. *Strickland*, 466 U.S. at 689. Prejudice can only be shown where a defendant is denied a fair, reliable trial, *id.* at 687, and where the defendant shows that the "proposed testimony would have altered the outcome of the trial." *Rega*, 263 F.3d at 21.

### b. Discussion

Assuming, *arguendo*, that both Xavier and Michael's counsel did not inform them of their right to testify, both petitioners fail to show how their testimony could have altered the outcome at trial.  The evidence against both Xavier and Michael at their respective trials was overwhelming, and nothing in Xavier or Michael's proposed testimony would have changed the outcome of either trial.[12]  As the government notes, evidence of guilt was

---

[12] For example, faced with substantial direct and circumstantial evidence tying him to the triple murder, Michael now states that, had he been permitted to testify, *he would have testified that he lied to the police and asked another individual to lie to the police on his behalf*.  Indeed, Michael states that he would have testified that on the date of the triple murder "I was in New York purchasing two kilograms of cocaine from one of my suppliers" (Affidavit of Michael Williams ("MW Aff." at 2)) and that "[w]hen I was questioned by the Allegheny county homicide detectives I told them that on the day in question I was in New York at Rosemary Gonzalez's brother-in-law['s] funeral. That was a lie.  I did not want to tell the detectives that I was in New York buying drugs.  I also told Rosemary Gonzalez that I was being accused for murders that I did not commit and I asked her to say that I was at the funeral."  *Id.*  As the Second Circuit has stated in the right-to-testify context, "any probability of an acquittal . . . must be based on an assessment that, if [petitioner] had testified, the jury would have credited his testimony, notwithstanding the substantial evidence against him."  *Rega*, 263 F.3d at 22.  Here, where Michael's proposed testimony (a) includes a statement that he lied to the police investigating him for a triple murder and (b) fails to address the substantial evidence against him, the *Strickland* prejudice prong has not been met.  Furthermore, Michael's proposed testimony includes an admission that he purchased two kilograms of cocaine in New York on the day of the double murder—this would only be further evidence in support of his drug conspiracy conviction under Count 8, for which he was sentenced to life imprisonment, and Racketeering Act Five under Count I.  Michael's proposed testimony similarly fails with regard to the numerous other counts for which he was convicted. Amongst other things, it fails to even address the conspiracy to murder Bernard Williams, for which Michael was convicted as Racketeering Act Two under Count I.

Xavier's proposed testimony fairs no better. He states that he would have testified as follows: "I did not store any drugs at Victor Mercado's apartment, nor was I involved in a conspiracy to shoot him.  Also . . . I was never a partner with Yaro Pack, did not have any association with Jason Protinick, never received any cocaine from Richard Feliciano, and did not sell any drugs to the Sex, Money, and Murder Organization."  XW Aff. at 2. This testimony would not rebut, or attempt to explain, the substantial evidence against Xavier and does not show that, had Xavier testified, there

so compelling that Michael's testimony only ran the danger of an adverse impression, thus increasing the chances of a jury deciding to apply the death penalty after conviction. *Accord id.* at 26 (reversing grant of habeas where petitioner's proposed "testimony would have done more harm than good").

Since neither petitioner has established prejudice, we need not consider the performance prong of the *Strickland* test, *i.e.* what was told to each petitioner regarding the right to testify. In any event, in response to a request from this Court, Xavier's counsel has submitted an affidavit in which he states that "[a]fter presentation of the government's case at trial Mr. Young [co-counsel] and I met with Mr. Williams to discuss the advisability of his testifying in his own defense.  Mr. Young and I presented our views, and explained that Mr. Williams had an absolute right to testify, and that the choice was ultimately his to make. He decided that he would not testify." Stern Aff. at 2.[13]  This affidavit is credible.  Furthermore, we note that Xavier does not contend that his counsel told him he could not

---

is a reasonable probability that "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  Of course, a simple denial of the charges is implicit in the entry of a not guilty plea.

[13] Xavier's counsel's affidavit was submitted in response to this Court's request to address Xavier's claim concerning plea negotiations, *supra*, as well as Xavier's right-to-testify claim.  Because Michael did not assert a claim alleging ineffective assistance with regard to plea negotiations, and in light of our finding that Michael's proposed testimony could not establish prejudice, we did not solicit an affidavit from Michael's counsel with regard to this issue.

testify, but rather that counsel "advised [Xavier] that he did not think it was a good idea for him to testify." XW Mem. at 24. Under the circumstances of this case, such advice was entirely reasonable. *See, e.g., Haouari v. United States*, 429 F.Supp.2d 671, 678 (S.D.N.Y. 2006)(denying ineffective assistance claim where petitioner's affidavit showed "only that (1) [petitioner] discussed with counsel whether or not he should testify, (2) counsel strongly advised him against it and gave reasons for this advice, and (3) [petitioner] made the decision not to testify as a result of counsel's 'insistence.'").

### 7. Section 924(c) Charge

Xavier claims that his counsel's failure to object to the jury instructions, which he claims constructively amended Count Six of the indictment, constituted ineffective assistance of counsel. XW Mem. at 25-27. Specifically, Xavier contends that the jury instruction for Count Six "constructively amended the indictment by allowing [him] to be convicted for possessing the firearm during and in relation to a drug trafficking crime." *Id*. at 27. Count Six of the Indictment charged Xavier as follows:

> On or about March 1, 1996, in the Southern District of New York, XAVIER WILLIAMS, the defendant, unlawfully, willfully and knowingly used and carried a firearm, to wit, a Glock 9 millimeter semi-automatic handgun,

31

during and in relation to a drug trafficking crime for
which he may be prosecuted in a court of the United
States, to wit, the Torres Organization's narcotics
distribution conspiracy, as charged in the Indictment
in Act of Racketeering Four of Count One, and Counts
Two and Five.

In his petition, Xavier quotes exclusively from a portion of the
jury charge relating to "aiding and abetting" a violation of 18
U.S.C. §924(c). Xavier omits, however, this Court's substantive
instruction on Count Six, which stated, in relevant part, as
follows:

> Count Six of the Indictment charges the defendant with
> *using* or *carrying* a firearm during and in relation to
> a drug trafficking crime – the Torres organization's
> narcotics distribution conspiracy – in violation of
> Title 18, United States Code, Section 924(c) and 2.
> Count Six reads as follows:
>
> [recites the text of Count Six, provided above]
>
> The relevant statute here provides that any person
> who, during and in relation to any drug trafficking
> crime for which he may be prosecuted in a court of the
> United States, *uses* or *carries* a firearm, shall be
> guilty of a crime.
>
> For Count Six, the government must prove the following
> elements beyond a reasonable doubt: First, that on or
> about March 1, 1996, the defendant used or carried a
> firearm, or any combination of those acts. Second,
> that the defendant *used* or carried the firearm during
> and in relation to a drug trafficking crime. Third,
> that the defendant acted knowingly, unlawfully and
> willingly.
>
> The first element the government must prove beyond a
> reasonable doubt on Count Six is that the defendant
> *used* or *carried* a firearm on or about March 1, 1996.

32

. . .

Use of a firearm requires an active employment of the firearm by the defendant, that is, a use that makes the firearm an operative factor in relation to a drug trafficking crime. This does not mean that the defendant must actually fire or attempt to fire the weapon, although those would obviously constitute use of the weapon. Brandishing, displaying or even referring to the weapon so that others present knew that the defendant had the firearm available if needed all constitute use of the firearm. *The mere possession of a firearm at or near the site of the crime without active employment as I have just described it is not sufficient to constitute use of a firearm.*

I also spoke of carrying a firearm. A person carries a firearm if he has the weapon within his control in such a way that it furthers the commission of a crime or was an integral part of the commission of that crime.

The second element that the government must prove beyond a reasonable doubt is that the defendant used or carried a firearm during and in relation to drug trafficking crimes charged in the Indictment in Racketeering Act Four of Count One and Counts Two and Five, specifically, the narcotics distribution conspiracy of the Torres organization. You are instructed that these offenses qualify as drug trafficking crimes under the law.

The final element the government must prove beyond a reasonable doubt on Count Six of the Indictment is that the defendant acted "unlawfully," "willfully" and "knowingly." I have previously instructed you on the meaning of those terms, and you could rely upon those instructions in considering Count Six of the Indictment.

XW Tr. at 2456-2458 (emphasis added).

The above instruction does not provide that Xavier could be convicted for "possession." Rather, it explicitly distinguishes

"possession" by stating that "[t]he mere possession of a firearm at or near the site of the crime without active employment . . . is not sufficient to constitute use of a firearm."  Thus, Xavier's argument relies solely on a portion of the charge related to "aiding and abetting" a violation of 18 U.S.C. 924(c).  That charge stated as follows:

> Now, with respect to Count Six, I must instruct you about aiding and abetting.  In Count Six, the defendant is also charged with aiding and abetting the *use* or *carrying* of a firearm in connection with a crime of violence that could be prosecuted in federal court.  I have already explained the concept of aiding and abetting in connection with earlier charges, and it means the same thing with respect to Count Six. You should apply my previous instructions on that subject.
>
> I do want, however, to give you an additional instruction that applies to aiding and abetting the use or carrying or possession of a firearm as charged in Count Six.  In order to convict a defendant of aiding and abetting another's *use* or *carrying* or *possession* of a firearm, it is not enough to find that the defendant performed an act to facilitate or encourage the commission of the underlying crime of violence with only the knowledge that a firearm would be *used* or *carried* or *possessed* in the commission of that crime.  Instead, you must find that the defendant performed some act that facilitated or encouraged the actual *using* or *carrying* or *possession* of the firearm in relation to the underlying crime.  For example, if you find that the defendant actually directed another person to *use* or *carry* a gun in the commission of the underlying crime or made such a gun available to another person, then the defendant aided and abetted another person's use of a firearm.  These examples are only by way of illustration and are not meant to be exhaustive.

Xw. Tr. at 2458-2459 (emphasis added).

As a preliminary matter, we note that the first part of this "aiding and abetting" charge instructs the jury with regard to "use" or "carrying"; not possession.   In any event, to the extent that the remaining portion of the aiding and abetting charge erroneously included "possession," the error could not have reasonably affected the outcome of this case.   This is because, amongst other reasons, the government did not proceed on an aiding and abetting theory against Xavier.[14]   The firearm at issue was recovered in Xavier's vehicle; no juror could have reasonably thought that Xavier was being convicted on a charge of aiding or abetting someone else's possession of the firearm when all the evidence made clear that the government was proving that Xavier actually used and carried the firearm.

Thus, whatever error there may have been in the "aiding and abetting" instruction did not "affect substantial rights," *United States v. Worjloh*, 546 F.3d 104, 110 (2d Cir. 2008), did not affect the "outcome of the district court proceedings," *United States v. Olano*, 507 U.S. 725, 734 (1993), and did not "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings," *id.* at 736.   "[T]he charge error . . . would not have made a difference in the result," and thus counsel's failure to object was not ineffective under

---

[14] In addition, we note that Xavier was sentenced to a consecutive five year term of imprisonment on Count Six.

*Strickland*.  *Larkins v. Herbert*, 165 Fed. Appx. 40, 42 (2d Cir. 2006) (summary order).

**8.  "Conceded" Guilt**

Bobby and Xavier claim that their respective counsel's concessions during summation constituted ineffective assistance of counsel.  Both arguments are without merit.

**a. Bobby**

Bobby claims that his counsel conceded guilt on the conspiracy charges during summation by stating that he was the "head of a multimillion dollar Torres organization."  BW Mem. at 15-16.  Bobby's argument is based on a line taken out of context.  The following excerpt from the summation makes it clear that Bobby's counsel was attempting to *discredit* the statements of a testifying witness; not concede guilt:

> Confessions are free. Why in the world would Bobby Williams confess to Earl Baldwin? And, you know, Earl Baldwin, he must have felt like he had died and gone to heaven the day that the feds showed up in his federal jail last year and said, we're here looking for information on Bobby Williams, and, you know, thank the Lord. I got something I can sell here. And it didn't take much.  All they got to do is take a lifelong criminal, he's gone from burglaries to purse snatching.  Told the police a lie and, well, he's got the experience, remember, because this whole story about he's working in this barber shop, some friend of his comes into the barber shop, shot in the stomach for a robbery, and somebody lied to the police and

36

they locked him up.  Somebody who thinks it would be
very nice to get out of jail sooner.  Michael
Villafane is a lifelong criminal.  A real drug dealer.
In the sense of dealing in more than 50 grams, 50-
kilogram quantities.  Somebody who sold 20 to 50
kilograms of heroin.  Whose team is he playing for?
Team USA.  An affection for guns.  *He says that he
sees Bobby, the head of a multimillion dollar Torres
organization, selling drugs in a bar hand to hand and
in the bathroom*.  Conspiracy to murder, attempted
murder, could walk out with time served.  He realizes
that he could walk out with time served."

EBW Tr. at 2973-2974 (emphasis added).

In context, it would be clear to a reasonable juror that
this was not a concession of guilt, but rather an attempt to
discredit the statements of a testifying witness.

### b. Xavier

Xavier contends that his counsel conceded his guilt by
making the following statements during summation:

Xavier Williams used a lot of names.  He had a lot of
cars. He wired money and money was wired to him. . . .
It's true.  Xavier Williams is a small-time hustler.
He goes where he can.  He sells little bits of drugs.
Sometimes he cooks for people . . . .

XW Tr. at 2306.

You know, Xavier couldn't keep up with his car
payments, couldn't keep up with his apartment
payments, was making small-time sales, the ones with
the blade runner, the one time he did it for Henry
Germany.  He sold a few hundred grams to other people.

XW Tr. at 2330.

37

These statements must be evaluated in the context of the overwhelming evidence against Xavier with regard to the other charges against him. Under the circumstances, it was a reasonable strategic choice to concede to certain charges in order to make more forceful arguments against others. *See, e.g., Florida v. Nixon*, 543 U.S. 175 (2004); *Farrington v. Senkowski*, 214 F.3d 237, 444 (2d Cir. 2000); *Monroe v. Dale*, 05 Civ. 6704 (LAK)(JCF), 2007 WL 1766770, at *7 (S.D.N.Y. June 17, 2007); *Frascone v. Duncan*, No. 01 Civ. 5924 (GBD), 2005 WL 1404791, at *2-3 (S.D.N.Y. June 14, 2005). Indeed, counsel presented exculpatory arguments that were more persuasive when coupled with the honesty of his concessions. *See,* e.g., XW Tr. at 2331 ("One thing is for certain, [Xavier] isn't a murderer and he isn't the head of some drug empire."). Unlike Michael and Bobby, Xavier was not facing the possibility of the death penalty or a mandatory life sentence.[15] Thus, faced with overwhelming evidence of the drug conspiracy, counsel's decision to concede Xavier's involvement in some drug related offenses in order to try to obtain acquittals on other offenses falls within the range of reasonable strategic decisions.

### 9.   Pretrial Investigation and Preparation of Proper Defense

---

[15] As noted earlier, the efforts of Xavier's counsel were instrumental in persuading the Department of Justice to abandon its earlier decision to seek the death penalty against Xavier.

Michael and Bobby assert that their respective counsel failed to prepare a proper defense based on their failure to adequately interview witnesses and failure to adequately test evidence in preparation of trial. *See* MW Mem. at 4; BW Mem. at 3.

As was noted earlier, over $500,000 was spent on the defenses for both Bobby and Michael. These expenses included, but were not limited to, consultations with jury consultants, psychiatrists, psychologists, mitigation specialists, ballistic experts, and investigators. While the amount of money spent in the preparation for trial does not always mean that that preparation met constitutional requirements, in the cases of both Michael and Bobby it was apparent to this Court that counsel's preparation was thorough and extensive. Counsel was not required to "scour the globe on the off-chance something will turn up." *Greiner v. Wells*, 417 F.3d 305, 321 (2d Cir. 2005) (quoting *Rompilla v. Beard*, 545 U.S. 374, 383 (2005)).

In any event, Michael and Bobby fail to point to anything that counsel should have investigated that would have altered the outcome of the trial. Michael argues that his counsel's investigator did not conduct enough witness interviews, only speaking with ten out of ninety-one individuals on the witness

list.[16]   MW Mem. at 4.   Specifically, Michael contends that his counsel's investigator should have interviewed Gladys Nolan, Virginia Scott, and Patty Simon.   *Id.*   But, again, Michael fails to explain what, if any, exculpatory information these witnesses could have offered in the face of overwhelming evidence of guilt.   For example, Michael claims that counsel should have interviewed Nolan "in order to find out if she had anything else to add to the case," and Scott in order to uncover "evidence that would prove Petitioner's innocence."   *Id.*   Such conclusory assertions are insufficient to establish ineffective assistance of counsel.   *See United States v. Feyrer*, 333 F.3d 110, 120 (2d Cir. 2003) (rejecting claim of improper pretrial investigation where defendant "made only the most conclusory assertions with respect to [counsel's] shortcomings and the likely effect of these alleged deficiencies on the jury's verdict"); *Polanco v. United States*, 99 Civ. 5739 (CSH), 2000 WL 1072303 at *10 (S.D.N.Y. Aug. 3, 2000) (collecting cases in which ineffective assistance counsel claims fail where petitioner fails to "identify what leads counsel should have followed in such an investigation, the nature of evidence that could have been discovered or presented, or what possible witnesses should have

---

[16] Bobby makes a similar argument that his counsel "did not interview all witnesses when asked by petitioner to do so."   BW Reply at 5.   The arguments of both Michael and Bobby do not acknowledge the reality that witnesses on the government's witness list are not obligated to, and often decline to, speak with defense counsel.

been contacted, much less how any of this would have revealed exculpatory information or been otherwise helpful to his case").[17]

Bobby claims that his counsel should have used an investigator to interview a T.V. talk show host named Richard Bey, who Bobby claims he was with "during the night in question," and with whom he took pictures that also included his girlfriend, Carol Johnson, "with daughter Cazica and niece Malika." BW. Mem. at 3. Bobby also claims that counsel should have interviewed "Mike Mitchell, who[] could have been a possible defense witness for the [p]etitioner." *Id.* Bobby's claim with regard to Mike Mitchell lacks any specificity and is precisely the kind of conclusory claim that courts have found insufficient. His claim regarding Richard Bey does not address conduct for which Bobby was convicted *and sentenced to a mandatory sentence of life imprisonment* (*i.e.,* the drug conspiracy), and lacks specificity sufficient to suggest how a potential investigation would have countered the substantial evidence against Bobby or resulted in a reasonable probability of a different outcome at trial.

---

[17] In the absence of a strong an specific showing of relevance and impact, claims that counsel ineffectively called witnesses at trial fall within the realm of counsel's trial strategy. *See United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998) ("The decision not to call a particular witness is typically a question of trial strategy that appellate courts are ill-suited to second-guess.").

Petitioners also claim that counsel was ineffective for failing to have DNA tests performed on a mask recovered by law enforcement in a car involved with the triple homicide. BW Mem. at 3-4; MW Mem. at 4-5. The evidence was overwhelming, however, that the car was used during triple homicide and that Michael and Bobby were using the car during the time at issue. *See, e.g.*, EBW Tr. at 1702-07; EBW Tr. at 566-67. There is not a reasonable probability that DNA tests on the mask, even if inconclusive or showing contact by other individuals, would have changed the outcome of this trial. Indeed, they very well could have provided additional evidence against the petitioners. Obviously a more substantial showing would have been necessary to have persuaded the court to have CJA funds expended for this purpose. In sum, counsel's decision not to seek DNA testing - or to conduct additional pretrial investigation - was not ineffective assistance.

**10. Motion for Second Hearing**

Michael claims his counsel was ineffective for failing to file a motion for a second hearing to question Detective James Cvetic, one of two affiants on a search warrant that produced much of the evidence against him. MW Mem. at 19.

42

Michael's motion to suppress evidence from this search had already been denied by this Court in *United States v. Williams*, 181 F. Supp. 2d 267 (S.D.N.Y. 2001), under the "good-faith" exception to the exclusionary rule, *United States v. Leon*, 468 U.S. 897 (1984).   Specifically, this Court held that "Det. Tallant [the other affiant] and the other officers who conducted the search of the Rippey Street apartments did so in reasonable reliance on the later-invalidated search warrant, and, therefore, are entitled to the *Leon* 'good faith' exception to the exclusionary rule." *Williams*, 181 F. Supp. 2d at 278.   As this Court noted in denying the suppression motion, "[o]nce [we] received an accurate picture of what Det. Tallant knew when he swore to the Tallant affidavit and searched the Rippey Street apartments, we were convinced that, had Det. Tallant included in the affidavit all the information he actually knew at the time, we would have found that the ensuing warrant was, in fact, supported by probable cause." *Id.* at 277.   In spite of this ruling, and the fact that Detective Cvetic testified before this Court on October 30, 2001 and was cross-examined by defense counsel, Michael claims that his counsel was ineffective for not recalling Cvetic to question him about what Michael describes as Cvetic's "history of be[i]ng untruthful when filing affidavit[]s in reference to witnesses."   MW Mem. at 19.   Michael fails to

43

show how any additional testimony from Detective Cvetic would change this Court's *Leon* determination, or, more significantly, the outcome at trial.   In any event, counsel's decision not to recall the witness to testify was not "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

### 11.   Motion Based on Insufficiency of Evidence

Michael argues that his counsel's failure to make an insufficiency of the evidence motion on Count Three, the conspiracy to murder Victor Mercado, amounted to ineffective assistance of counsel.   MW Mem. at 20.

Michael's ineffective assistance claim is without merit because his counsel did in fact join in a motion made by Bobby's counsel for a judgment of acquittal under Federal Rule of Criminal Procedure 29 as to *all counts*.   *See* EBW Tr. at 2523. This motion was denied.[18]

### 12.   Multiple Conspiracy Instruction

---

[18] Because Michael's counsel joined in the Rule 29 motion, we need not consider the merits of Michael's claim.   We note, however, that in light of the "very heavy burden," a defendant making an insufficiency claims faces (*United States v. Desena*, 287 F.3d 170, 177 (2d Cir. 2002), and the fact that a jury verdict is upheld if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000)), Michael's claim would also fail on the merits.   In addition, to the extent that Michael might contend that his Rule 29 motion did not cover Count 3 because Bobby was not charged in Count 3, we find that argument to be without merit.

Michael claims that his counsel's failure to request a multiple conspiracy instruction, so that the jury would understand the existence of multiple, separate organizations, constituted ineffective assistance of counsel.  MW Mem. at 22-23.

As the government notes (Gov. Mem. at 79), the Second Circuit rejected a similar argument raised by Xavier on direct appeal.  *United States v. Williams*, No. 05-6036-cr, 2007 WL 3105760, at *4 (2d Cir. Oct. 23, 2007) ("Having reviewed the record, we conclude that the government established the existence of a single conspiracy as charged in the superceding indictment. . . . And even if Xavier was entitled to a multiple conspiracy charge, he has not demonstrated that he was prejudiced by the district court's refusal to give one.").  The same analysis applies here, where there was substantial evidence showing a single, continuing RICO enterprise, and where Michael has not shown that the issuance of a multiple conspiracy charge would have affected the outcome of the trial.  *See id.* ("A refusal to give a multiple conspiracy charge does not prejudice a defendant where, as here, there was ample proof before the jury for it to find beyond a reasonable doubt that the defendant was a member of the conspiracy charged in the indictment.").

**13.  Counsel's Performance**

45

Michael and Bobby each claim that their respective counsel made cumulative errors before and during trial, and therefore the court must consider the prejudicial effect of the combined errors when assessing whether counsel was ineffective.  MW Mem. at 25-26; BW Mem. at 22. Both claims fail because, as the analysis above shows, neither Michael nor Bobby have shown that there is a reasonable probability that the result of their trials would have been different if counsel had acted differently.

                *                    *                         *

Each of the petitioners makes various challenges to his sentence based on ineffective assistance of counsel claims. While we briefly consider all sentencing-related claims below, we note at the outset that Bobby and Michael faced mandatory life sentences after the jury decided not to impose the death penalty.  Specifically, Bobby and Michael both faced mandatory life sentences for their convictions on Counts Five through Seven (murder in aid of racketeering activity).  In addition, Bobby faced a mandatory life sentence for his conviction on Count Eight (conspiracy to distribute narcotics).[19]  Thus, any

---

[19] Bobby faced a mandatory life sentence for his conviction on Count Eight because he had three prior felony convictions involving drug distribution. *See* 21 U.S.C. § 841(b)(1)(A) ("If any person commits a violation of this subparagraph . . . of this title after two or more prior convictions for a

claims Bobby or Michael make with respect to their counsel's performance in the context of the Sentencing Guidelines is without merit because even if counsel had made an argument that resulted in a change in the Guidelines, there would not (and indeed could not) have been an impact on either petitioner's final sentence.[20]

### 14.  3553(a) Sentencing Factors

Xavier and Bobby claim that their respective sentences are unreasonable because the Court did not take all of the 18 U.S.C. § 3553(a) factors into account when imposing sentence.  As a result, both petitioners claim, their counsel provided ineffective assistance by failing to object during sentencing. XW Mem. at 29-32; BW Mem. at 16-18.

---

felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release. . . .").

[20] Counsel for both Michael and Bobby were clearly aware that any potential change in the sentencing guidelines range would have had no impact on the ultimate sentence for either defendant.  Thus, instead of raising arguments about specific guidelines calculations (although, at Michael's request, counsel did raise certain guidelines' arguments (*see* Michael Williams Sentencing Tr. at 3:3-4:8, Aug. 17, 2005)), counsel for both Michael and Bobby focused their efforts at sentencing on requesting that their clients be placed in prisons near their families. *See id.* at 4:15-18 ("These sentences are mandatory.  There is no discretion. . . .[M]y second request was for placement so that my client's family could have access to him . . . ."); Bobby Williams Sentencing Tr. at 4:17-23, Aug. 17, 2005 ("Several of the counts of conviction carry mandatory life imprisonment terms, regardless of what guideline calculations happen to come about, so that in recognition of that fact, what I am going to ask the court to do . . . is to include in the judgment of conviction a recommendation that Mr. Williams be incarcerated somewhere in the Pennsylvania area where he has family.").

As a preliminary matter, we note that Xavier already raised this same issue on appeal and his sentence was affirmed. *United States v. Williams*, No. 05-6036-cr, 2007 WL 3105760 (2d Cir. Oct. 23, 2007).  He also raised a similar argument in a motion under 18 U.S.C. § 3582, which was rejected by the undersigned and by the Court of Appeals.

In any event, the Second Circuit has "imposed no . . . requirement that a sentencing judge *precisely identify* either the factors set forth in § 3553 or specific arguments bearing on the implementation of those factors in order to comply with her duty to consider all the § 3553 factors along with the applicable Guidelines range." *United States v. Fernandez*, 443 F.3d 19, 29 (2d Cir. 2006) (emphasis in original). "As long as the judge is aware of both the statutory requirements and the sentencing range or ranges that are arguably applicable, and nothing in the record indicates misunderstanding about such materials or misperception about their relevance, we will accept that the requisite consideration has occurred." *United States v. Rose*, 496 F.3d 209, 213 (2d Cir. 2007) (internal quotation marks omitted).

Here, this Court was aware of the relevant statutory requirements, sentencing ranges, and the § 3553 factors when imposing sentence.  Indeed, Xavier points to "nothing in the

record indicat[ing] misunderstanding about such materials or misperception about their relevance." *Id.* Furthermore, the life sentence recommended by the Guidelines for Xavier was not unreasonable under the circumstances of this case. In sum, there was no reason for Xavier's counsel to argue at sentencing that the Court had not considered all of the § 3553 factors, and any such argument would have had no impact on Xavier's sentence.[21]

### 15. Drug Quantity in the PSR

Xavier and Bobby both argue that their counsel provided ineffective assistance by failing to object to the drug quantity stated in the Pre-Sentence Report and used as the basis for sentencing.

We reiterate that Bobby was facing a mandatory life sentence for his convictions for murder in aid of racketeering, and thus any objection based on drug quantity calculations would have had no impact on his sentence.

With regard to Xavier, we note that he already raised the issue of his drug quantity on direct appeal, in an 18 U.S.C. §

---

[21] As noted above, Bobby faced a mandatory life sentence and thus any objection at sentencing based on § 3553 would have had no impact on his sentence.

3582 motion to this Court, and on a subsequent appeal. All three times his argument was rejected.

In any event, as this Court stated at sentencing, "there was an abundance of testimony from numerous witnesses . . . to support a conclusion that [Xavier] distributed in excess of 150 kilograms of cocaine. Xavier Williams Sentencing Tr. at 6:16-23, Oct. 7, 2005. As for the Court's authority to make this determination, the Second Circuit has confirmed that sentencing judges are not limited to considering the facts admitted by the defendant or found by the jury beyond a reasonable doubt but are instead obligated to make their own factual findings at sentencing using a preponderance standard. *See United States v. Vaughn*, 430 F.3d 518, 526 (2d Cir. 2005) ("[D]istrict courts remain statutorily obliged to calculate Guidelines ranges in the same manner as before *Booker* and to find facts relevant to sentencing by a preponderance of the evidence."). Here, Xavier's counsel made a strategic choice not to challenge certain Guidelines calculations but to instead argue for a downward variance (*i.e.* a non-Guidelines sentence) from the calculated term of life imprisonment.[22] Such a decision was not unreasonable.

---

[22] Indeed, at sentencing Xavier's counsel stated that "the government says in their letter that nothing changes the guideline calculation. And because I

50

**16.   "Organizer or Leader" Sentence Enhancement**

Xavier, Michael, and Bobby all claim that their respective counsel provided ineffective assistance by failing to object to a four-level enhancement under section 3B1.1(a) of the Guidelines for being an organizer or leader of a criminal activity that involved five or more participants.   Again, Michael and Bobby's arguments must fail because their Guidelines calculations were essentially irrelevant since both were facing mandatory life sentences.   Xavier's argument fails because counsel's decision to not object to the enhancement was reasonable in light of the overwhelming evidence on this issue (*see, e.g.*, XW Tr. at 93-94, 97-98, 472-75, 518-22), as well as counsel's decision to seek a variance in spite of the Guidelines calculation.

**17.   Change in Guidelines**

Xavier claims that his counsel was ineffective for failing to insist on the use of the Guidelines in effect at the time of the conspiracy to commit murder charged in Racketeering Act 1(a) and Count Three of the Superseding Indictment.   This claim is without merit because this Court did in fact use the edition of

---

think that's accurate, I'm not sure it's worth quibbling over the things. . . ."  Xavier Williams Sentencing Tr. at 5:14-16, Oct. 7, 2005.

the Guidelines Manual in effect at the time of the offense.[23]   In any event, Xavier was sentenced to life imprisonment on Counts One, Two, and Five; any potential change to Xavier's sentence based on his Guidelines' challenge here would not have affected the total amount of time he was sentenced to prison.

### 18.  Murder-for-hire Enhancement

Xavier claims his counsel was ineffective for failing to object to the four-level enhancement to his offense level pursuant to section 2A2.1(b)(2) for an offense involving the offer or receipt of anything of pecuniary value for undertaking a murder.

Xavier's claim fails because this enhancement *was not* applied to Xavier's offense level; though the PSR originally included it, the government objected to the enhancement in an October 6, 2005 letter and it was not included in the final Guidelines calculation submitted by the Probation Department.[24] In any event, the life imprisonment sentences for Xavier on Counts One, Two, and Five were imposed to run concurrently;

---

[23] This Court has reviewed the Probation Department's Presentence Investigative Report ("PSR"), which states, in relevant part, that "[t]he Guidelines Manual in effect at the time the offense was committed was utilized for calculation purposes. . . ."   PSR at ¶ 40.   In addition, we note that it was the government which informed the Probation Department that the earlier version of the Guidelines Manual (which was advantageous to Xavier) should have been used. *See id.* at 23.

[24] This change was reflected in a "Second Addendum to the Presentence Report."

thus, any change to Xavier's sentence based on his Guidelines challenge here once again would not impact the total amount of prison time to which he was sentenced.

### 19. Career Offender Enhancement

Michael and Bobby argue that their respective counsel provided ineffective assistance by failing to object to the career offender enhancement under section 4B1.1 of the Guidelines and the government's failure to provide the required prior felony information pursuant to 28 U.S.C. § 851. Once again, Michael and Bobby were sentenced to mandatory life terms and thus an objection to the applicable Guidelines calculations would not have affected the ultimate sentences. Thus, Michael and Bobby's respective counsel were not ineffective for failing to object to the enhancement.[25]

### 20. Statutory Maximum Sentence

In a supplemental petition, Xavier contends that his counsel provided ineffective assistance by failing to object to the Court's determination of the applicable statutory maximum

---

[25] In his reply brief, Michael challenges what he calls a "[g]eneral jury verdict," (MW. Reply at 10), and contends that the indictment was defective because it did not specify "the relevant drug amounts." *Id*. at 11. While Michael does not appear to raise these claims in the context of an ineffective assistance of counsel claim, we find that the special verdict form used at trial was appropriate. In addition, the indictment did charge drug quantities.

sentence for Counts One, Two, and Five.  Xavier's Supplemental Submission ("XW Supp.")(Dkt. No. 12) at 2.  Xavier contends that the applicable statutory maximum was not life imprisonment, but rather twenty years.

In support of his claim, Xavier argues that his indictment was defective because it:

(a) "failed to identify the mixtures or substances that allegedly contained cocaine base," (*id. at 3*);

(b) "failed to adequately allege drug quantity" (*id.* at 4); and

(c) incorrectly used the conjunctive when charging Xavier with a conspiracy to "distribute *and* possess with the intent to distribute. . ." (*id.* at 2 (emphasis added)).

Xavier's claims fail because, amongst other reasons:

(a) Count Five of the indictment adequately and accurately charged him with a conspiracy to "distribute and possess with the intent to distribute 50 grams and more of mixtures and substances containing detectable amounts of cocaine base, in a form commonly known as 'crack.'"  "Crack" cocaine was the "mixture or substance" (21 U.S.C. § 841(b)) at issue.

(b)  The  indictment  adequately  charged  drug  quantity  (*see* Count Five, *supra*).

(c)  There  was  no  error  in  the  use  of  the  conjunctive  in  the indictment.  *See  Griffin  v.  United  States*,  502  U.S.  46,  56 (1991)  ("'When  a  jury  returns  a  guilty  verdict  on  an  indictment charging  several  acts  in  the  conjunctive  .  .  .  the  verdict stands  if  the  evidence  is  sufficient  with  respect  to  any  one  of the  acts  charged.'")(quoting  *Turner  v.  United  States*,  396  U.S. 398,  420  (1970)).   The  above  arguments  would  not  have  been successful  and  thus  Xavier's  counsel  was  not  ineffective  for  not raising  them.[26]

\*                              \*                                \*

In  addition  to  the  above  ineffective  assistance  of  counsel claims,  Michael  and  Bobby  have  each  filed  motions  "to  stop prosecutor's  vindictiveness  and  denial  of  the  separation  order of  father  and  son  (Elijah  [Bobby]  Williams  and  Michael Williams)."   Separately,  Michael  filed  a  "[m]otion  for  recusal  of a  bias,  impartial,  trial  judge  on  this  § 28:2255  motion  under

---

[26] Xavier also contends that the offenses charged in Counts One, Two, and Five were all class C felonies subject to maximum terms of imprisonment of twelve years.  XW Supp. at 5.  Xavier is incorrect, as all three offenses were Class A felonies (*i.e.* felonies "for which a maximum punishment of life imprisonment or death is authorized."  *United States v. Eng*, 14 F.3d 165, 172 (2d Cir. 1994)).  *See* 18 U.S.C. § 1963(a) (providing maximum punishment for violations of 18 U.S.C. § 1962) and 21 U.S.C. § 841(b) (providing maximum punishment for violations of 28 U.S.C. § 841(a)).

title 28 U.S.C. § 144 and § 455 for judicial bias and prejudice." We briefly address each motion below.

### 21.  Prosecutorial Vindictiveness

Both Bobby and Michael request that this Court lift a Separation Order issued by the Bureau of Prisons ("BOP") which separated them from one another (Bobby and Michael were cell-mates until the issuance of the Separation Order). To the extent that Bobby and Michael challenge the conditions of their confinement, such a motion should be brought pursuant to 18 U.S.C. § 2241, not § 2255. "A challenge to the *execution* of a sentence-in contrast to the *imposition* of a sentence-is properly filed pursuant to § 2241." *Levine v. Apker*, 455 F.3d 71 (2d Cir. 2006). In any event, "[w]henever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement." *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004). *See also, e.g.*, *Santulli v. United States*, 02 Civ. 8664 (SAS), 2003 WL 21488084, at *2. Here, where both petitioners and presumably the Warden are located in Pennsylvania, this Court lacks jurisdiction over Michael and Bobby's § 2241 claims.[27]

---

[27] In addition, we note that prisoners must, absent a showing of "cause and prejudice," exhaust their administrative remedies prior to filing a petition under § 2241. *See Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001). The exhaustion requirement may be waived if "(1)

## 22.   Recusal

On May 28, 2010, Michael filed a motion for this Court to recuse itself on the grounds that, amongst other things, this Court allowed the indictment allegedly containing dozens of double jeopardy violations (and not including drug quantities) to go trial.

Under 28 U.S.C. § 455(a), a judge must recuse herself "in any proceedings in which [her] impartiality might reasonably be questioned."   "[T]his test deals exclusively with appearances. Its purpose is the protection of the public's confidence in the impartiality of the judiciary." *United States v. Amico*, 486 F.3d 764, 775 (2d Cir. 2007).   "The district judge has discretion in the first instance to determine whether to disqualify [herself]. . . . The recusal decision requires that the district court carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning [her] impartiality might be seeking to avoid the adverse consequences of [her] expected adverse decisions."

---

available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question.'"   *Beharry v. Aschroft*, 329 F.3d 51, 62 (2d Cir. 2003)(internal citation omitted).   Here, neither Bobby nor Michael has made such a showing.

*In re Basciano*, 542 F.3d 950, 956 (2d Cir. 2008)(internal quotation marks and citations omitted).

Here, where Michael's claims of bias (which he raises after years of litigation) are based on his disagreement with a number of legal rulings made throughout the trial phase, and his appeal has upheld his conviction and his petition for a writ of *certiorari* to the Supreme Court was denied, there is no basis for the motion to recuse and it is denied.

## CONCLUSION

For the foregoing reasons, the petitions of Elijah Bobby Williams, Michael Williams, and Xavier Williams are denied.  As the petitioners have not made a substantial showing of denial of a constitutional right, a certificate of appealability will not issue.  *See* 28 U.S.C. § 2253.  Additionally, we certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).


Dated:     New York, New York
           July 28, 2011

           NAOMI REICE BUCHWALD
           UNITED STATES DISTRICT JUDGE

A copy of the foregoing Order has been mailed on this date to the following:

*Pro Se* Petitioners:
Xavier Williams
#02149-748
USP Allenwood
P.O. Box 3000
White Deer, PA 17887

Michael Williams
#49780-054
USP Caanan
P.O Box 300 (C-1)
Waymart, PA 18472

Elijah Bobby Williams
#02152-748
U.S.P-Tucson
P.O. Box 24550
Tucson, AZ 85734


Attorney for Respondent:
AUSA Andrew Bauer
U.S. Attorney's Office
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007