```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X
UNITED STATES OF AMERICA,

                                              MEMORANDUM AND ORDER
            - against -
                                                00 Cr. 1008 (NRB)
XAVIER WILLIAMS,

                      Defendant.
--------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Presently before the Court are two motions made by defendant Xavier Williams, each seeking a reduction of the life sentence imposed upon him by this Court on October 7, 2005. The first is based upon Amendment 782 to the United States Sentencing Guidelines, which retroactively adjusts offense levels associated with certain drugs (including cocaine and cocaine base). See U.S.S.G. Supp. App. C at 64-74 (2014); U.S.S.G. § 1B1.10(d) (2014). The second, which Williams filed pro se, is based upon section 404 of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), which makes retroactive certain provisions of the Fair Sentencing Act of 2010, Pub. L. 111-220, 124 Stat. 2372 (2010). Because relief under either Amendment 782 or the First Step Act is unwarranted in this case, we deny both motions in their entirety.

**BACKGROUND**

In July of 2005, a jury convicted Williams of (1) engaging in a racketeering enterprise; (2) racketeering conspiracy; (3) conspiracy to commit murder; (4) conspiracy to distribute and possess with intent to distribute 50 grams or more of crack and 5 kilograms or more of cocaine; (5) use of a firearm in relation to a drug trafficking crime; and (6) conspiracy to commit money laundering.

Prior to sentencing, the Probation Office issued a report in which it concluded that Williams and his co-conspirators had purchased over 250 kilograms of cocaine for distribution, and that Williams himself had "distributed at least 250 kilograms of crack, which had been processed from the cocaine possessed by the Torres Organization." Presentence Investigation Report ("PSR"), dated October 7, 2005, ¶¶ 19, 52. Based in part on these findings, Probation calculated a combined adjusted offense level of 43 under the then-applicable sentencing guidelines, derived from a base offense level of 38, plus a four-level role adjustment pursuant to § 3B1.1(a) and an additional one-level multiple count adjustment pursuant to § 3D1.4. Given Williams' Criminal History Category of III, the resulting guidelines range was life in prison plus five years.

At sentencing, Williams' defense counsel argued for a downward variance, but agreed with the Probation Office's

calculation of the guidelines range.  Sentencing Tr. 3:14-19; 20:20-22.  At no point did Williams request an evidentiary hearing as to the quantity of drugs involved in the narcotics offense, nor did he dispute the Court's finding that "an abundance of testimony from numerous witnesses" supported the "conclusion that defendant distributed in excess of 150 kilograms of cocaine. . . . And obviously the testimony involved Mr. Williams' role as the cooker of [the] crack."  Id. at 5:23-7:9.  After analyzing the statutory factors set forth at 18 U.S.C. § 3553(a), the Court sentenced Williams to life in prison plus 5 years.  See Judgment & Conviction (November 4, 2005), ECF No. 198.  The Second Circuit affirmed his conviction and sentence on direct appeal.  See United States v. Williams, Nos. 05-6036, 05-6038, 05-6065, 2007 WL 3105760 (2d Cir. Oct. 23, 2007) (summary order), cert. denied, 552 U.S. 1223 (2008).

Since then, Williams has filed several post-conviction motions for relief, many of which have attacked our determination of the quantity of cocaine and crack involved in his offense conduct.  See Mem. and Order, August 11, 2015, ECF No. 296 (summarizing Williams' post-conviction motions).  The first of Williams' two pending motions falls squarely within this category.  In it, he seeks a sentence modification pursuant to Amendment 782 of the Sentencing Guidelines and 18 U.S.C. § 3582(c)(2), or, in the alternative, an evidentiary hearing so

that he can establish that the drug quantities involved in his offense trigger a retroactive reduction of the applicable guidelines range.  Williams filed the motion pro se on August 29, 2018, but counsel subsequently appeared on his behalf, filed a supplemental memorandum in support, and continued to brief the motion in response to the Government's opposition.[1]  See ECF Nos. 303, 313, 318, 321, and 324.

Williams' second motion, captioned as a "motion to correct sentence pursuant to 28 U.S.C. § 2255," was filed pro se on July 12, 2019, and seeks a reduction of Williams' sentence pursuant to section 404(b) of the First Step Act, which makes retroactive a change in the quantity of crack necessary to trigger certain mandatory minimum and maximum penalties under 21 U.S.C. § 841. See ECF No. 325.  The Government responded by letter on August 9, 2019, see ECF No. 326, and Williams filed a motion for appointment of counsel on August 13, 2019, see ECF No. 327. Williams responded to the Government's August 9 letter on August 29, 2019.  See ECF No. 331.

We turn first to Williams' Amendment 782 motion.

### DISCUSSION

A.  Amendment 782

---

[1]     Accordingly, Williams' August 29, 2018 request for an appointment of counsel in connection with his Amendment 782 motion is denied as moot.  See ECF No. 302.

4

Under 18 U.S.C. § 3582(c)(2), this Court, "after considering the factors set forth in section 3553(a)," may reduce a term of imprisonment if it was "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." The statute "establishes a two-step inquiry." Dillon v. United States, 560 U.S. 817, 826 (2010). "At step one, § 3582(c)(2) requires the court to follow the Commission's instructions in [U.S.S.G.] § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized," id. at 827, and § 1B1.10 in turn requires the court to "determine the amended guidelines range that would have been applicable to the defendant if the amendment(s) to the guidelines listed in subsection (d) had been in effect at the time the defendant was sentenced" holding all else constant, U.S.S.G. § 1B1.10(b)(1) (2014). "At step two of the inquiry, § 3582(c)(2) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction . . . is warranted in whole or in part under the particular circumstances of the case." Dillon, 560 U.S. at 827. However, we reach step two "[i]f, and only if, a defendant is eligible for a reduction in sentence under 18 U.S.C. § 3582(c)(2) and U.S.S.G. § 1B1.10." United States v. Mock, 612 F.3d 133, 134 (2d Cir. 2010) (per curiam).

5

Defendant's motion fails at the first step of the Dillon inquiry. Amendment 782 increases the amount of cocaine required to trigger a base offense level of 38 from 150 kilograms to 450 kilograms, and raises the corresponding threshold for crack from 1.5 kilograms to 25.2 kilograms. See U.S.S.G. supp. app. C at 64-74 (2014). The Court's finding at sentencing that Williams' offense involved at least 150 kilograms of cocaine and that Williams cooked that cocaine into crack satisfies the new threshold for crack, particularly given that testimony at trial demonstrated that Williams was adept at "stretching" cocaine to yield even higher quantities of crack. See Trial Tr. 473:2-13; 474:18-475:7; 521:1-12.

Williams argues that the Court's finding was insufficiently specific, citing United States v. Melendez, 679 F. App'x 68, 71 (2d Cir. 2017) (summary order) (vacating a district court's denial of an Amendment 782 motion in the absence of a specific drug quantity finding). But in Melendez, the extent of the district court's finding was a general remark that the guidelines appeared "accurately computed"; it made no other reference to drug quantity, nor did it specifically adopt the relevant provisions of the Probation Office's presentence report. Here, the Court, mindful of "the chance that [drug quantity] might show up as [a guidelines calculation issue] on a later date," Sentencing Tr. 6:3-6, made a specific judicial

6

determination as to the amount of cocaine that Williams distributed and cooked into crack – findings that defense counsel did not object to at the time and that have been left undisturbed on appeal or otherwise for nearly fifteen years. And while the Court did not adopt the relevant provisions of the PSR at sentencing, we did so in a subsequent Order, citing the Probation Office's finding that "[Williams] distributed at least 250 kilograms of crack" in support of our conclusion that Williams was ineligible for a sentencing modification under Amendment 706.[2]  See Order, Nov. 24, 2008, ECF No. 211 (citing paragraph 12 of the PSR).  The Second Circuit affirmed our decision on appeal, holding that "the crack cocaine guidelines applicable to [Williams'] conviction are unaffected by Amendment 706" "[b]ecause the quantity of crack cocaine involved in [his] offense far exceeded [the new threshold of] 4.5 kilograms." United States v. Williams, 08-6115-cr (2d Cir. Dec. 9, 2009)

Even if the Court were to accept Williams' argument and evaluate anew the drug quantities involved in his offense, it would not change our conclusion regarding his eligibility.  An abundance of testimony at trial established that Williams was engaged in a nearly decades-long drug-trafficking conspiracy involving drug quantities exceeding the new amended guidelines

---

[2]  Amendment 706, like Amendment 782, retroactively changed the quantities of crack associated with certain base offense levels.

7

thresholds of least 25.2 kilograms of crack and 450 kilograms of cocaine. Witness Richard Feliciano, for example, testified that Williams was a proficient cooker of crack, and that he had sold Williams approximately 400 to 500 kilograms of cocaine for this purpose in the 1990s. Trial Tr. 536:16-537:6; 542:13-21; 551:1-6. While Williams spends a substantial portion of his motion assailing Feliciano's credibility, he offers no reason to disbelieve Victor Mercado, who testified that between the beginning of 1994 and the fall of 1995, Williams stored 10 to 20 kilograms of cocaine per week in Mercado's apartments – totaling somewhere between 900 and 1,800 kilograms - and cooked that cocaine into crack for wide-scale distribution. Id. 158:8-159:14; 163:4-23; 191:20-24. Nor does he challenge the testimony of witness Jason Protnick, who told the jury that he brought nearly 100 kilograms of cocaine to apartments where Williams was cooking crack, id. 332:22-333:14; 334:8-349:25, and that he helped install hidden compartments in vehicles for Williams and his co-conspirators, which could be used to conceal and transport up to 100 kilograms of narcotics at a time, id. 350:6-360:11; 477:2-7. Substantial evidence of the conspirators' willingness to commit acts of violence and money laundering in connection with their narcotics conspiracy provide further evidence of Williams' participation in a trafficking operation of enormous size and scale. And all this is

8

consistent with his concessions in a prior appellate submission that he "was prove[n] to be a prolific drug dealer for a period of years," and that "[t]he government's trial evidence amply proved [his] lengthy involvement in narcotics trafficking." Br. for Def.-App. Xavier Williams at 28, June 23, 2006, 05-6036-cr.

In short, whether we rely on our prior drug quantity findings or undertake a fresh review of the record evidence, we have little trouble concluding that the quantities of crack and cocaine involved in Williams' offense far exceed the relevant thresholds under Amendment 782. Accordingly, we deny his request for an evidentiary hearing and conclude that he is again ineligible for a sentencing modification under § 3582(c)(2).

B. First Step Act

Williams' second motion seeks relief under the First Step Act (the "Act"), which makes retroactive certain provisions of the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372. As relevant here, section 2 of the Fair Sentencing Act increased the amount of crack required to trigger the mandatory minimum penalties set forth in 21 U.S.C. § 841(b)(1)(A) from 50 grams to 280 grams. While, as enacted, this provision only applied prospectively to offenders who were sentenced after the statute took effect, section 404(b) of the First Step Act allows a court that had previously imposed a sentence for a "covered offense" to "impose a reduced sentence as if section[ ] 2 . . .

9

of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed." Section 404(a) defines "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, that was committed before August 3, 2010." The Act further provides that "[n]othing in [section 404] shall be construed to require a court to reduce any sentence pursuant to this section." Id. at § 404(c).

The Government concedes that Williams satisfies the procedural prerequisites for eligibility set forth in section 404(c) of the Act. The parties disagree, however, as to whether Williams' conviction for conspiracy to distribute at least 50 grams of crack and five kilograms of cocaine is a "covered offense" under section 404(a), and, if so, whether Williams should receive a discretionary sentence reduction. The issue of whether Williams' offense is "covered" under the statute boils down to a question of statutory interpretation. According to the Government's reading of section 404(a), the "statutory penalties" clause modifies "violation," such that an "offense" is not "covered" by the First Step Act unless section 2 or 3 of the Fair Sentencing Act changed the penalties associated with the quantity of drugs involved in the underlying violation. Because, as discussed supra, Williams' violation involved the distribution of more than 280 grams of crack, under this reading

of the statute, he would be ineligible for First Step Act relief.

Most courts addressing the issue have disagreed with the Government's interpretation, albeit for different reasons. Some have concluded that the "penalties" clause is more naturally read to modify the term "statute," rather than "violation." See, e.g., United States v. Rose, 379 F. Supp. 3d 223, 228 (S.D.N.Y. 2019) (finding that various principles of statutory construction support a conclusion that eligibility is determined by whether "the penalties associated with their statute of conviction were among those amended by the Fair Sentencing Act"). Others have interpreted the phrase "violation of a Federal criminal statute" to refer to the charges in the indictment. See, e.g., United States v. Martinez, 04-CR-48 (JSR), 2019 WL 2433660 (S.D.N.Y. June 11, 2019) (reasoning that "violation of a Federal criminal statute" refers to the drug quantity charged in the indictment, and determining First Step Act eligibility on the basis of that quantity). Under either of these reading, whether an offense is "covered" is determined not by the amount attributed to the defendant by judicial finding, but rather by reference to the statute of conviction or the drug amount charged in the indictment.

The Second Circuit has yet to weigh in on the dueling interpretations of the First Step Act, and we need not resolve

11

the issue here because even if Williams were eligible for a sentence reduction under the First Step Act, it would not be warranted in this case.  The only change wrought by application of the penalty provisions of the Fair Sentencing Act in Williams' case would be a reduction of the mandatory minimum penalty associated with his crack offense from ten years imprisonment to five.  But Williams' crack offense is merely one part of Count Five of Williams' conviction, which also included the charge of conspiring to distribute at least 5 kilograms or more powder cocaine.[3]  Under 21 U.S.C. § 841(b)(1)(A), this powder cocaine offense independently triggered a ten-year mandatory minimum penalty that remains unchanged by the passing of the First Step Act.  Thus, Williams was subject to a ten-year mandatory minimum on Count Five regardless of whether or not the penalty provisions of the Fair Sentencing Act were in effect at the time of his offense.

Moreover, an analysis of the factors set forth in 18 U.S.C. 3553(a) does not favor a modification of Williams' sentence.[4] Allowing Williams to benefit from the fact he was indicted prior to the modification of the enactment of the Fair Sentencing Act - when his offense conduct involved more than enough crack to

---

[3] Our reference to Count Five of Williams' conviction refers to his violation of 21 U.S.C. § 846, and corresponds to Count Eight of the Judgment. See ECF No. 198.

[4] The parties here agree that we may consider these factors in evaluating whether to reduce Williams' sentence.

meet the new mandatory minimum triggers set forth therein - would create unwarranted sentencing disparities in relation to defendants who were found guilty of the same underlying conduct after 2010.  See 18 U.S.C. § 3553(a)(6).  Moreover, Williams' post-conviction conduct - a mixed bag of serious infractions and evidence of rehabilitation, see ECF No. 313 at 14-23; ECF No. 326 at 10-11 – does not move this Court to stray from our conclusion that a sentence of life imprisonment appropriately reflects the seriousness of the offenses for which Williams was convicted, which include racketeering and engaging in conspiracies to commit murder, launder money, and traffic large quantities of narcotics.  See § 3553(a)(2)(A).  As we remarked at the time, "there are cases in which a defendant by his conduct forfeits his right to remain in society.  This case is one of those."  Sentencing Tr. 23:5-7.

As a final point, the Government has requested that the Court specify the statutory provision under which Williams' First Step motion is brought.  We agree with the Government that the motion is "most naturally interpreted as [a] motion[] brought under § 3582(c)(1)(B)," Martinez, 2019 WL 2433660, at *3, which permits modification of an imposed term of imprisonment only to the extent "expressly permitted by statute."  18 U.S.C. § 3582(c)(1)(B).  We further agree with the Government (and the overwhelming majority of courts to address

13

the issue) that the First Step Act does not "expressly permit[]" a full or plenary resentencing "carr[ying] with it all of the procedural trappings and collateral effects of the original sentencing." Rose, 379 F. Supp. 3d at 232; see Martinez, 2019 WL 2433660, at *3 ("The Court notes that nearly every other court to address the issue has also held that the First Step Act does not contemplate plenary resentencings."). Accordingly, Williams is not entitled to be present for a new sentencing hearing, and the Court will not consider his arguments pertaining to non-retroactive changes to the law that have occurred after the date of his original sentence.[5]

---

[5] Williams' motion for appointment of counsel in connection with his First Step Act motion is also denied. There is no post-conviction right to counsel in these circumstances. See, e.g., Pennsylvania v. Finley, 481 U.S. 551, 551 (1987) ("The right to appointed counsel extends to only the first appeal of right[.]"). Moreover, the arguments in favor of Williams' request for a discretionary reduction were already advanced by counsel in connection with his Amendment 782 motion, and we perceive no need to separately appoint counsel for additional briefing on the issue.

14

**CONCLUSION**

We conclude that Williams is not entitled to a reduction of his sentence pursuant to either Amendment 782 or the First Step Act. Accordingly, both of his motions for relief are denied in their entirety and the Clerk of Court is directed to terminate the motions pending at ECF Nos. 302, 303, 313, 325, and 327.

**SO ORDERED.**

Dated:   New York, New York
         October 17, 2019

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

15

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

**Defendant**
Xavier Williams, Reg. No. 02149-748
FCI Bennettsville
P.O. Box 52020
Bennettsville, SC 29512