UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
UNITED STATES OF AMERICA,

              Respondent,

      - against –

XAVIER WILLIAMS,

              Petitioner.

------------------------------X

**MEMORANDUM AND ORDER**

00 CR 1008 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Before the Court is an application by Xavier Williams ("Williams" or "defendant") to reduce his life sentence to 292 months pursuant to 18 U.S.C. § 3582(c)(1)(A). This is one of many motions Williams has made to challenge or reduce his sentence.[1]

---

[1] Williams has filed several post-conviction motions for relief apart from his direct appeal of his conviction and sentence, which were affirmed. See United States v. Williams, Nos. 05-6036, 05-6038, 05-6065, 2007 WL 3105760 (2d Cir. Oct. 23, 2007); cert. denied, 552 U.S. 1223 (2008). First, on October 2, 2008, Williams moved for a reduction of his sentence under 18 U.S.C. § 3582(c)(2), arguing that the sentence was improperly based on the Court's finding that defendant distributed more than 150 kilograms of cocaine and that his sentence should be adjusted in light of the November 1, 2007 Amendment to the U.S. Sentencing Guidelines. The motion was denied. See Order, Nov. 24, 2008, ECF No. 211. The decision was summarily affirmed by the Second Circuit. See United States v. Williams, No. 08-6115 (2d Cir. Dec. 9, 2009). Next, he brought a motion for ineffectiveness of counsel under 28 U.S.C. § 2255, which was also denied. See Order, Jul. 28, 2011, ECF No. 268. We declined to issue a certificate of appealability ("COA"), which Williams then appealed, and the Second Circuit also denied the COA and dismissed the appeal. Williams v. United States, No. 11-4572 (2d Cir. Mar. 19, 2012). Then on March 25, 2013, Williams filed a motion under Federal Rule of Civil Procedure 60(b), arguing there was plain error in the determination of the drug quantity on which his term of imprisonment was based, which the Court again denied. See Mem. and Order, Aug. 10, 2015, ECF No. 296. The Second Circuit declined to issue a COA. See Williams v. United States, No. 15-2791 (2d Cir. Mar. 16, 2016). Most recently, Williams brought a motion to reduce his life sentence pursuant to Amendment 782 of the U.S. Sentencing Guidelines and Section 404 of the First Step Act of 2018. The Court found once again that Williams was not entitled to a reduction of his

At this point, Williams is 54 years old and has served 22 years of his life sentence.

On July 8, 2005, Williams was convicted of: (1) engaging in a racketeering enterprise, including by conspiring to commit murder, conspiring to distribute and possess with intent to distribute crack cocaine and cocaine, and conspiring to commit money laundering; (2) racketeering conspiracy; (3) conspiracy to commit murder; (4) conspiracy to distribute and possess with intent to distribute 50 grams or more of crack cocaine and 5 kilograms or more of cocaine; (5) use of a firearm in relation to a drug trafficking crime; and (6) conspiracy to commit money laundering.

From the mid-1990s until his arrest, Williams was a leader of the "Torres Organization," a violent narcotics distribution organization.  Williams would obtain powder cocaine, cook it into crack cocaine, and distribute it from the Bronx to Western Pennsylvania.  Presentence Investigative Report ("PSR"), dated October 7, 2005, ¶¶ 19-20.  Along with his brother and nephew, who were tried separately from Williams,[2] Williams distributed hundreds

---

sentence and the motion was denied in its entirety.  See Mem. and Order, Oct. 17, 2019, ECF No. 333.

[2] Williams' brother and nephew were tried in a capital case, convicted of murder, and received life sentences as well.

of kilograms of crack cocaine over a multi-year period.  Id. ¶¶ 14, 19.  Prior to sentencing, Probation concluded that Williams and his co-conspirators had purchased over 250 kilograms of cocaine for distribution, and that Williams himself had "distributed at least 250 kilograms of crack, which had been processed from cocaine purchased by the Torres Organization."  Id. ¶¶ 19, 52.

Besides the sheer quantity of drugs distributed, the organization was often violent.  Specifically, Williams was convicted of conspiring to murder Victor Mercado, who had allowed Williams to use his apartment to store drugs and cook cocaine. Id. at ¶ 22.  After learning that Mercado was stealing from the stash of drugs in 1995, Williams directed an associate to kill Mercado.  Id.  His associate complied and shot Mercado five times in the chest, leg, and head.  Id.  Fortunately, Mercado survived the attack.

In justifying the recommendation of a life sentence, Probation stated that Williams' "willingness to conspire, and attempt to carry out murder to advance his crack-distribution operation demonstrates his dedication to a criminal lifestyle which is unparalleled in the scourge it presents to society:  drug distribution advanced by the use of firearms and murder."  Id. at 26.  At sentencing, the Court came to a similar conclusion and

stated "there are cases in which a defendant by his conduct forfeits his right to remain in society.  This case is one of those." Sentencing Tr., Oct. 7, 2005 ("Sentencing Tr.") at 23:5-7. The defendant's current submission does not cause the Court to reach another conclusion.[3]

Under 18 U.S.C. § 3582(c)(1)(A), a court may "reduce the term of imprisonment" if, after considering the factors set forth in 18 U.S.C. § 3553(a), "it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).[4]  A motion for compassionate release is "not an opportunity to second guess or to reconsider the sentencing court's original decision." United States v. Roney, 833 F. App'x 850, 854 (2d Cir. 2020) (quotation marks omitted).  The defendant, in making the motion, bears the burden of proving "extraordinary and compelling reasons". United States v. Butler, 970 F.2d 1017, 1026 (2d Cir.

---

[3] In reviewing the motion, the Court has considered the defendant's initial brief and all exhibits (ECF No. 365), the government's opposition (ECF No. 375), the defendant's reply brief and all exhibits (ECF No. 387), and the supplemental authority submitted by the defendant pro se (ECF No. 390) and by defendant's counsel (ECF No. 389).

[4] The statute also requires that a defendant fully exhaust all administrative remedies.  18 U.S.C. § 3582(c)(1)(A).  Both parties agree that the defendant has satisfied Section 3582's statutory exhaustion requirement.  Government Opposition ("Gov. Br.") at 3, ECF No. 375.

1992); see also United States v. Castelle, No. 18-cr-15, 2022 WL 4536798, at *1 (S.D.N.Y. Sep. 28, 2022).

The defendant's alleged extraordinary and compelling circumstances are: (1) that a life sentence is, in and of itself, extraordinary; (2) that Williams has shown "remarkable post-incarceration conduct and rehabilitation"; and (3) that his age and the COVID-19 pandemic has "bolster[ed] the extraordinary and compelling reasons." Defendant's Motion to Reduce His Life Sentence ("Def. Br.") at 10, ECF No. 365. Even taken together, these arguments do not rise to the level of extraordinary or compelling reasons.

Williams' argument relies in large part on his rehabilitative efforts, namely, that he has "completed over 90 educational and vocational programs amounting to over 3,500 hours of programming" and that he has become a mentor to others while incarcerated.[5] See Def. Br. at 15, 17-18. Defense counsel argues that this is extraordinary, as Williams has attempted to rehabilitate himself "despite no certainty of release." Def. Br. at 15. The numerous letters written by Williams' children, family, and friends convey

---

[5] A review of the records indicates that these positive steps do not span the length of his incarceration. The majority of the programs occurred in the last eight years. See Exhibit E to Def. Br., ECF No. 365-5. Similarly, in support of his application, Williams includes records of his charitable donations, all of which occurred in the last two years. See Exhibit B to Defendant's Reply In Support of His Motion for Reduced Sentence ("Def. Reply"), ECF No. 387-2.

that Williams has worked to maintain close and supportive relationships with his now-adult children while incarcerated and used his time in prison to better himself and mentor others. See Exhibit A to Def. Br., ECF No. 365-1; Exhibit A to Def. Reply, ECF No. 387-1. He has even been recognized with a special monetary award from the warden for his "outstanding performance as a Victim Impact Program Mentor." See Exhibit C to Def. Br. at 3, ECF No. 365-3. These efforts are laudable, and the Court does not want to diminish them. However, the Second Circuit has held that "[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason." United States v. Brooker, 976 F.3d 228, 238 (2d Cir. 2020) (alterations in original).

Despite Williams' positive steps, the Court is also aware of the fact that Williams has not always been an exemplary prisoner. As the Government indicates, Williams has received several infractions, such as possessing a dangerous weapon, fighting, and threatening bodily harm. Gov. Br. at 6. Most recently, in 2013, Williams told a person via telephone to intimidate a community member who testified. Id. These infractions are serious and distinguish Williams from allegedly comparable cases cited by the defendant. In practically every case cited by Williams, the defendants had no, or incredibly minor, disciplinary infractions

over a longer period in prison.   See e.g., United States v. Underwood, No. 88-cr-822, 2021 WL 3204834, at *3 (S.D.N.Y. Jan. 15, 2021) (no infractions in 33 years); United States v. Fisher, 493 F. Supp. 3d 231, 238 (S.D.N.Y. 2020) (no infractions in 38 years); United States v. Torres, 464 F.Supp.3d 651, 662 (S.D.N.Y. 2020) (only one infraction for a messy cell in 33 years); United States v. Tellier, No. 92-cr-689, 2022 WL 1468381, at *3 (S.D.N.Y. May 10, 2022) (two minor infractions in about 30 years); United States v. Millan, No. 91-cr-685, 2020 WL 1674058, at *11 (three minor and nonviolent violations in 28 years).[6]

The defendant next argues that Williams should be granted compassionate release because of his age and the threat of the COVID-19 pandemic.   The defendant's brief states "Mr. Williams' age suggests his chances of recidivism are low," because the

---

[6] The defendant and his counsel recently submitted letters identifying five additional cases from S.D.N.Y., E.D.N.Y., and E.D. Mich. for the Court's consideration.   See Motion Requesting Admittance of Special Authority, ECF No. 390; Notice of Authority, ECF No. 389.   Each case is, by definition, unique and non-binding, and is in fact distinguishable.   To illustrate this point, both defendant and his counsel direct the Court to United States v. Russo from the Eastern District.   2022 U.S. Dist. LEXIS 213643 (E.D.N.Y. Nov. 2, 2022).   In the case, Judge Block reduced the life sentence for two defendants, neither of whom he sentenced originally, to 35 years.   Id. at *23, 30.   This sentence is still more than a decade longer than the one Williams currently requests.   While convicted of similar crimes, Judge Block noted that the defendants had gone 21 and 18 years, respectively, without any disciplinary infractions.   Id. at *11, 27.   This is more than double Williams' nine years without disciplinary infractions.   Moreover, Judge Block considered the fact that there were sentencing disparities with other co-defendants.   Id. at *18-19, 26.   Here, the defendant's co-defendants who were convicted of similar conduct were also sentenced to life.   In a system which strives for individualized sentences, a comparative analysis of other district court cases like this is of limited value.

Sentencing Commission has found that "older offenders are substantially less likely to recidivate following release compared to younger cohorts." Def. Br. at 26. Williams is currently 54 years old. While it is true that defendants who are in their fifties have lower recidivism rates than younger defendants, there is still a significant rate of recidivism in this age bracket. In the Sentencing Commission's study on "The Effects of Aging on Recidivism Among Federal Offenders," the rearrest rate for men ages 50 to 59 at the time of release was 29.2%, which is essentially one in three defendants in that age range. U.S. Sentencing Comm'n, Effects of Aging on Recidivism Among Federal Offenders, Dec. 2017, at 24. Focusing on defendants with a Criminal History Category of III, like Williams, the rearrest rate of those defendants age 50 to 59 is 38.4%.[7] Id. at 25. The rearrest rate falls to 17.1% for male defendants released at age 60 or older generally but remains at 25.5% for those with a Criminal History Category of III over 60. Id. at 24, 25.

The cases cited by Williams in support of his argument that

---

[7] The Presentence Investigation Report details that Williams was convicted of Attempted Criminal Possession of Stolen Property in the Fifth Degree for stealing a car at age 19. PSR ¶¶ 70-71. Then at 20, Williams was convicted of Criminal Mischief. Id. ¶ 72. Five years later, Williams was convicted of Attempted Criminal Possession of a Weapon in the Fourth Degree for holding a woman at gunpoint and striking her. Id. ¶¶ 74-75. And finally, six years later, Williams was convicted of Possession of a Forged Instrument in the Third Degree. Id. ¶ 76.

his "age makes the risk of recidivism extremely remote" involve defendants who, all or most of whom, were significantly older than Williams.  Def. Br. at 27; see Fisher, 493 F. Supp. 3d at 232 (73-year-old defendant who had served 38 years); United States v. Rodriguez, 492 F. Supp. 3d 306, 315 (S.D.N.Y. 2020) (defendant would be over 60 at the time of release); United States v. Rice, No. 83-cr-150-3, slip op. at 2 (S.D.N.Y. Aug. 5, 2020) (87-year-old defendant); US v. Bass, No. 10-cr-166, 2020 WL 2831851, at *3 (N.D.N.Y. May 27, 2020) (63-year-old defendant).  Williams is not in an age bracket which significantly eliminates the risk of recidivism.

The addition of the COVID-19 pandemic is not enough to transform Williams' arguments into extraordinary and compelling circumstances.  Williams is not at significantly heightened risk as a 54-year-old who has been vaccinated against the disease and who has no health conditions that would increase his risk factors. See e.g., United States v. Gonzalez-Casillas, No. 07-cr-527-1, 2022 WL 446011, at *4 (S.D.N.Y. Feb. 11, 2022)(holding an overweight, 50-year-old defendant is not at significantly heightened risk to establish extraordinary and compelling reasons).

Even assuming that Williams had demonstrated extraordinary

and compelling circumstances, the application of the factors set forth in 18 U.S.C. § 3553(a) counsels against release.   Those factors include "the nature and circumstances of the offense," as well as the need "to protect the public from further crimes of the defendant" and the "need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct."   18 U.S.C. §§ 3553(a)(1), (a)(2)(C), (a)(6).

Williams led a violent narcotics-distribution organization, distributed over 250 kilograms of crack cocaine, and directed an associate to murder Victor Mercado.  At sentencing, the Government argued that Williams was "an integral part of all of the criminal activity," and when his co-defendants went to prison, "he then continued his activities back in the Bronx and Pennsylvania." Sentencing Tr. at 16:20-24.  At the time of sentencing, this Court, in weighing the factors, made the rare decision to impose a life sentence (albeit a guidelines sentence) in order to reflect the seriousness of Williams' crime and the threat he posed to the public.   Sentencing Tr. at 23:8-13.   If the Court were to grant the motion for compassionate release now, it would materially alter the sentence imposed.[8]  See United States v. Kantor, 853 Fed.Appx.

---

[8]  The Unites States Life Expectancy Tables published by the National Center for Health Statistics indicate that a non-Hispanic black man

-10-

723, 726 (2d Cir. 2021) ("[C]ourts regularly consider how compassionate release would alter the aims of the original sentence. . . . That inquiry often involves assessing the proportion of the defendant's stated sentence yet to be served.").

To further put Williams' argument in context, it is noteworthy that certain of the crimes committed by Williams carry mandatory minimums. Specifically, conspiracy to distribute and possess with intent to distribute 50 grams or more of crack cocaine and 5 kilograms or more of cocaine carries a 10-year mandatory minimum, 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1),[9] and use or carry of a firearm in relation to a drug trafficking crime carries a five-year mandatory minimum to be served consecutively, 18 U.S.C. § 924(c). As such, this Court would be required to sentence a defendant that distributed five kilograms of cocaine, with a gun in his pocket, without using the weapon or committing any acts of violence to 15 years. Yet here, defendant asks the Court to

---

aged 54-55 has a life expectancy of 23.5 years. See Nat'l Center for Health Statistics, Revised United States Life Tables, 2001-2011, https://www.cdc.gov/nchs/data/dvs/LEWK3_2011.pdf. Therefore, Williams has effectively served half of his original sentence.

[9] The Court's prior opinion found that while the First Step Act may reduce the mandatory minimum for 21 U.S.C. § 841(a)(1), it does not change the mandatory minimum for 21 U.S.C. § 841(b)(1)(A) when the quantity exceeds 5 kilograms of cocaine, as it did here. See Mem. and Order, Oct. 17, 2019, at 12, ECF No. 333. Therefore, Williams would still be subject to a ten-year mandatory minimum for 21 U.S.C. § 841(b)(1)(A).

determine that seven years beyond the absolute minimum sentence is sufficient for a defendant that distributed many multiples of that quantity of drugs which triggers the mandatory minimum and ordered a murder to protect his trafficking operation.

In addition to considering proportionality generally, reducing Williams' sentence would be disproportional to his co-defendants. Williams' brother and nephew, who were all indicted together for their roles in the violent Torres Organization drug distribution, were also sentenced to life, and the Court explicitly considered their sentences in imposing one on the defendant. See Sentencing Tr. 22:12-23:2.

Moreover, Williams minimum guidelines sentence is life. Probation calculated that Williams had a total offense level of 43 under then-applicable sentencing guidelines and a Criminal History Category of III, resulting in a guidelines sentence of life.[10] PSR ¶¶ 67, 80. Williams challenged the guidelines application, and the Court found that Williams' guidelines were unaffected by Amendment 706 or Amendment 708 to the United States Sentencing Guidelines. See Order, Nov. 24, 2008, ECF No. 211; Mem. and Order, Oct. 17, 2019, ECF No. 333. Even if Williams was not treated as

---

[10] The combined adjusted offense level of 43 was derived from a base offense level of 38, plus a four-level role adjustment pursuant to § 3B1.1(a) and an additional one-level multiple count adjustment pursuant to § 3D1.4. See PSR at 12-13.

a leader or organizer (which he indisputably was) and thus his offense level was four points lower, the minimum guidelines sentence would be 324 months or 27 years.  Williams has not even served the sentence that construct would have dictated.  Simply put, the length of Williams' sentence is not extraordinary in light of his conduct, the mandatory minimums, and the guidelines.

While the Court appreciates and commends a defendant's efforts to rehabilitate himself, Williams' actions are not so extraordinary or compelling to warrant a departure from the Court's original sentence for all the reasons set forth above.

## CONCLUSION

Having concluded that Williams is not entitled to a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), the motion is denied, and the Clerk of the Court is directed to terminate the motion pending at ECF No. 365.


**SO ORDERED.**

Dated:      New York, New York
            February 3, 2023


NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

-13-