UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
UNITED STATES OF AMERICA

- against -

XAVIER WILLIAMS,

Defendant.
-------------------------------------X

**MEMORANDUM AND ORDER**

00 Cr. 1008-1 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Defendant Xavier Williams ("Williams" or "defendant") has filed a motion, his sixth post-conviction motion for relief,[1] seeking to have this Court "reconsider its denial of his prior section 404(b) motion under the First Step Act" and once again

[1] As this Court has previously noted, ECF No. 391 at 1 n.1, Williams has filed myriad post-conviction motions for relief in addition to his direct appeal of his conviction and sentence, which were affirmed. See United States v. Williams, Nos. 05-6036, 05-6038, 05-6065, 2007 WL 3105760 (2d Cir. Oct. 23, 2007), cert. denied, 552 U.S. 1223 (2008). On October 2, 2008, Williams moved for a reduction of his sentence under 18 U.S.C. § 3582(c)(2), arguing that the sentence was improperly based on the Court's finding that Williams distributed more than 150 kilograms of cocaine and that his sentence should be adjusted. The motion was denied, see Order, Nov. 24, 2008, ECF No. 211, and the decision was summarily affirmed by the Second Circuit, see United States v. Williams, No. 08-6115 (2d Cir. Dec. 9, 2009). Next, Williams brought a motion for ineffectiveness of counsel under 28 U.S.C. § 2255, which was denied. See Order, July 28, 2011, ECF No. 268. This Court declined to issue a certificate of appealability ("COA"), which Williams then appealed. The Second Circuit also denied the COA and dismissed the appeal. Williams v. United States, No. 11-4572 (2d Cir. Mar. 19, 2012). On March 25, 2013, Willams filed a motion under Federal Rule of Civil Procedure 60(b), arguing there was plain error in the determination of the drug quantity on which his term of imprisonment was based, which the Court denied. See Mem. and Order, Aug. 10, 2015, ECF No. 296. The Second Circuit declined to issue a COA. See Williams v. United States, No. 15-2791 (2d Cir. Mar. 16, 2016). Subsequently, Williams brought a motion to reduce his life sentence pursuant to Amendment 782 of the U.S. Sentencing Guidelines and Section 404 of the First Step Act of 2018. Again, the motion was denied. See Mem. and Order, Oct. 17, 2019, ECF No. 333. Finally, on January 19, 2022, Williams brought a motion to reduce his life sentence to 292 months pursuant to 18 U.S.C. § 3582(c)(1)(A). The motion was denied. ECF No. 391. The Second Circuit summarily affirmed the ruling. United States of America v. Williams, No. 23-6154 (2d Cir. Jul. 18, 2024).

seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A). ECF No. 405 ("Mot.") at 1. This Court denied Williams's prior motion under Section 404(b) of the First Step Act ("Section 404(b)") in a fulsome 16-page opinion filed on October 17, 2019, ECF No. 333 ("2019 Order"), and denied his prior compassionate release motion in a 13-page decision on February 3, 2023, ECF No. 391 ("2023 Order"). Williams's appeal of each decision was denied. See United States v. Williams, No. 19-3637, Dkt. No. 71 (2d Cir. Dec. 23, 2021) ("the motion is DENIED and the appeal is DISMISSED because it 'lacks an arguable basis either in law or in fact.'"); United States v. Williams, No. 23-6154, Dkt. No. 48 (2d Cir. July 18, 2024) ("We are not persuaded by Williams's argument on appeal that his efforts at rehabilitation support a sentence reduction.").

Given the lengthy procedural history and Williams's many prior motions, the Court assumes the parties' familiarity with the facts of this case. For purposes of this motion, it is sufficient to recount that beginning in the mid-1990s, Williams was the leader of a narcotics distribution organization called the "Torres Organization" that often resorted to violent means to facilitate its narcotics distribution. Presentence Investigative Report, dated Oct. 7, 2005 ("PSR") ¶¶ 14, 19. Specifically, Williams was convicted of conspiring to murder an individual named Victor Mercado after Williams directed an associate to kill Mercado for

stealing from the Torres Organization's stash of drugs, resulting in Mercado being shot five times in the chest, leg, and head. Id. ¶¶ 22, 36.

On July 8, 2005, following a jury trial, Williams was convicted of: (1) engaging in a racketeering enterprise, including by conspiring to commit murder, conspiring to distribute crack cocaine and cocaine, and conspiring to commit money laundering; (2) racketeering conspiracy; (3) conspiracy to commit murder; (4) conspiracy to distribute and possess with intent to distribute 50 grams or more of crack cocaine and 5 kilograms or more of cocaine; (5) use of a firearm in relation to a drug trafficking crime; and (6) conspiracy to commit money laundering. This Court sentenced Williams to life in prison. Williams is now 58 and has served 25 years of his life sentence. The Court will address defendant's request for reconsideration and his request for compassionate release in turn in the context of this background.

## I. **Motion for Reconsideration of the 2019 Order**

Recognizing that a defendant may only bring a single motion under Section 404(b),[2] Williams styles his motion as one for reargument. To prevail on a motion for reargument, a party must "point to controlling decisions or data that the court overlooked

[2] First Step Act § 404(c) ("No court shall entertain a motion made under [Section 404] to reduce a sentence . . . if a previous motion made under this section to reduce the sentence was . . . denied after a complete review of the motion on the merits.").

. . . that might reasonably be expected to alter the conclusion reached by the court." Orbach v. United States, 2017 WL 6513652, at *1 (S.D.N.Y. Dec. 5, 2017) (internal citation and quotation marks omitted). Reconsideration of a prior decision is an "extraordinary remedy to be employed sparingly[,]" Reese v. United States, 164 F. Supp. 3d 608, 610 (S.D.N.Y. 2016) (citation omitted), and "[t]he standard for granting a motion for reconsideration is strict." Orbach, 2017 WL 6513652, at *1. Williams has failed to identify any such omissions or change in the law, as the following discussion makes clear.[3]

Defendant's argument that controlling law requires this Court to reconsider its 2019 Order is unconvincing. For example, defendant argues that this Court's attribution of over 250 kilograms of narcotics to him was "based solely on judicial findings" in violation of Apprendi v. New Jersey, 530 U.S. 466 (2000) and Alleyne v. United States, 570 U.S. 99 (2013), a defect

[3] Defendant cites to "Rules 59(e) and 60(b)" as the basis for reconsideration. Mot. at 2. Federal Rules of Criminal Procedure 59 ("Matters Before a Magistrate Judge") and 60 ("Victim's Rights") are plainly inapplicable to defendant's motion. Thus, it is the Court's understanding that defendant was referring to Federal Rules of Civil Procedure 59 and 60. "The Rules of Civil Procedure do not apply here because this is a criminal case[.]" United States v. Jones, 2022 WL 16836744, at *1 n.1 (S.D.N.Y. Nov. 9, 2022). Given that the rules of civil procedure do not apply, the Court will consider defendant's motion to arise under Local Criminal Rule 49.1(b). However, defendant's motion for reconsideration comes more than six years after the Court's previous denial and is therefore untimely under Rule 49.1(b), which requires motions for reconsideration to be filed within 14 days after the Court's order. While this procedural infirmity "is itself a sufficient basis for denial," the Court will nonetheless address defendant's motion for reconsideration on the merits. United States v. Lisi, 2020 WL 1331955, at *1 (S.D.N.Y. Mar. 23, 2020).

that Williams argues "alone justifies resentencing." Mot. at 4-5. While the Court may consider Alleyne and Apprendi in connection with a First Step Act motion, see United States v. Miller, 2024 WL 4107211, at *9 (E.D.N.Y. Sep. 6, 2024) ("Alleyne does not have retroactive effect . . . but it does inform the process by which the court goes about resentencing" under the First Step Act.), "[t]he First Step Act is clear that it does not 'require a court to reduce any sentence[,]'" United States v. Holloway, 956 F.3d 660, 666 (2d Cir. 2020). In other words, even if Alleyne and Apprendi were relevant to whether defendant "is [] eligible for relief," that does not mean that the defendant is "necessarily entitled to relief." Id. As such, Alleyne and Apprendi do not compel reconsideration.

Defendant also points to Concepcion v. United States, 597 U.S. 481 (2022) to argue that the "the Court's original decision did not conduct a 'complete review on the merits' as required[.]" Mot. at 3. Concepcion, however, is explicit that "[a]ll that the First Step Act requires is that a district court make clear that it 'reasoned through [the parties'] arguments.'" Concepcion, 597 U.S. at 501 (alteration in original). This Court's 2019 Order did exactly that. 2019 Order at 12 ("The only change wrought by application of the penalty provisions of the Fair Sentencing Act in Williams' case would be a reduction of the mandatory minimum

penalty associated with the crack offense[.]"); see also id. at 9–14.

For similar reasons, defendant's citation to United States v. McGriff, 2022 WL 89373, at *2 (2d Cir. Mar. 28, 2022) is unavailing. The Second Circuit in McGriff was clear that "all that § 404(b) instructs a district court to do is to determine the impact of Sections 2 and 3 of the Fair Sentencing Act." Id. The Court did so in the 2019 Order. See 2019 Order at 12.

Because defendant has not identified any "controlling decisions or data that the court overlooked" that "might reasonably be expected to alter the conclusion reached by the court," Orbach, 2017 WL 6513652, at *1, Williams' motion for reconsideration of the 2019 Order is denied.

## II. Motion for Compassionate Release[4]

Turning to the defendant's motion for compassionate release, the motion essentially raises the same arguments as defendant's earlier motion, albeit three years later. The Court carefully considered the initial application, see 2023 Order, and discerns no basis at this time to reach a different conclusion.

---

[4] Motions for compassionate release brought by the defendant may only be considered "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility[.]" 18 U.S.C. § 3582(c)(1)(A). The Government argues that Williams "has not provided any record" showing he satisfied the exhaustion requirement. ECF No. 409 at 5. Williams disputes this contention. ECF No. 413 ("Reply") at 2. Because we find that a sentence reduction is unwarranted on the merits, resolution of this dispute is immaterial to our consideration of this motion.

Section 3582(c)(1)(A) sets forth that a court, "upon motion of the defendant . . ., may reduce the term of imprisonment" if, after considering the sentencing factors set forth in 18 U.S.C. § 3553(a), "it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

Congress further provided in 28 U.S.C. § 994(t) that the Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction[.]" In response, the Sentencing Commission published Section 1B1.13 of the Sentencing Guidelines, which explains what constitutes extraordinary and compelling reasons for a sentence reduction.[5] Section 1B1.13 includes examples of specific circumstances that amount to "extraordinary and compelling reasons." See U.S.S.G. § 1B1.13(1)-(4). None of those circumstances apply here. Thus, to qualify for a sentence reduction, Williams must satisfy either U.S.S.G § 1B1.13(b)(5), which allows for a sentence reduction if "[t]he defendant presents any other . . . combination of

[5] We note that prior to November 1, 2023, the Sentencing Commission's guidance in U.S.S.G. § 1B1.13 did not apply to motions for compassionate release that were brought directly by defendants. See United States v. Brooker, 976 F.3d 228, 236 (2d Cir. 2020). "Effective November 1, 2023, however, the Sentencing Commission amended the Guidelines to also cover defendant-initiated petitions." United States v. Corbett, 2023 WL 8073638, at *3 (S.D.N.Y. Nov. 21, 2023).

circumstances that . . . are similar in gravity to" the enumerated examples, or U.S.S.G. § 1B1.13(b)(6), which provides that:

> [i]f a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents and extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

Further, as the Supreme Court recently reiterated, "'[e]xtraordinary' means 'most unusual,' 'far from common,' and 'having little or no precedent,'" while "'[c]ompelling' means 'tending to convince or convert by or as if by forcefulness of evidence.'" Fernandez v. United States, 146 S. Ct. 1292, 1302 (2026).

As he did in 2023, Williams relies primarily on his argument that a reduction in sentence is warranted because of his rehabilitation while incarcerated. As we explained in the 2023 Order, "'[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" 2023 Order at 6 (quoting Brooker, 976 F.3d at 237-38) (alterations in original). "[I]ndeed [it] is expected" and "not uncommon" that defendants will "mak[e] good use of one's time in prison[.]" United States v. Negron, 2021 WL 3540240, at *2 (S.D.N.Y. Aug. 10, 2021).

It appears that in the intervening years since 2023, Williams has continued along his path of rehabilitation, participating in additional educational and vocational programs, making charitable contributions, and continuing to mentor other inmates, among other things. Here again, "the Court does not want to diminish" Williams's efforts, which we continue to view as "laudable." 2019 Order at 6. However, that does not change that rehabilitation and productive use of one's time is expected of inmates and is not "extraordinary" or "compelling."

Nor does Williams point to any change in law that "would produce a gross disparity between the sentence being served and the sentence likely to be imposed" today. U.S.S.G. § 1B1.13(b)(6). Williams argues that Amendment 821 to the Sentencing Guidelines "properly places him in [Criminal History] Category III," which Williams argues "shows that his original guideline range was inflated and that a life sentence . . . is grossly disproportionate." Mot. at 5. However, given Williams's offense level of 43, PSR ¶ 67, his guideline sentence would be life imprisonment regardless of his criminal history category, see U.S. Sentencing Comm'n, Guidelines Manual, ch. 5, pt. A (2025).

Nor does the case law cited by defendant suggest a sentence reduction is warranted. Defendant's reliance on Hewitt v. United States, 606 U.S. 419, 422-23, 440 (2025) has no bearing on this motion as Hewitt simply held that "all first time § 924(c)

offenders who appear for sentencing after the First Step Act's enactment date—including those whose previous [] sentences have been vacated and who thus need to be resentenced—are subject to the Act's revised penalties." Id. at 440. Williams is not a Section 924(c) offender. Similarly, Williams's reference to Pepper v. United States, 562 U.S. 476 (2011) is unconvincing. It is true that the Supreme Court in Pepper found that "evidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors." Id. at 490. However, the relevance of rehabilitation to those factors does not rise to the level of a sentence reduction here, nor does it abrogate Congress's legislative mandate that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" to reduce a sentence imposed. 28 U.S.C. § 994(t).

The other precedents cited by defendant are clearly distinguishable in light of defendant's leading role in the Torres Organization and the fact that defendant points to no relevant trauma or diminished capacities that would warrant a sentencing reduction. See, e.g., United States v. Nunley, 792 F. Supp. 3d 327, 334, 340 (D. Conn. 2025) (noting that the defendant's upbringing "involved significant trauma, abuse, and neglect" and granting a motion for compassionate release because the defendant "had less capacity than many to resist invitations to criminal activity"); United States v. Pagan, 2025 LEXIS 143595, at *10 (D.

Conn. July 28, 2025) (finding that a sentence reduction was warranted because defendant's "decision-making faculties were likely further impaired as a result of the repeated physical and emotional trauma he was subject to during his most formative years."); United States v. Savoy, 2024 U.S. Dist. LEXIS 110121, at *9 (D. Md. June 20, 2024) (emphasizing "the disparity between the sentence [defendant] received and those of his codefendants" where the sentence rested solely on a narcotics conspiracy charge). Where, as here, the defendant was the leader of an extensive and violent criminal enterprise with no indication of diminished capacity, a sentence reduction is unwarranted.

Even if we were to find that Williams had presented extraordinary and compelling reasons for a sentence reduction, the sentencing factors set forth in 18 U.S.C. 3553(a) would still counsel against a reduction. We previously considered these factors in our 2023 Order. 2023 Order at 9-13. There, we emphasized consideration of "'the nature and circumstances of the offense,'" and "'the need 'to protect the public from further crimes of the defendant,'" Id. at 10 (citing 18 U.S.C. §§ 3553(a)(1), (a)(2)(C), (a)(6)). The same considerations apply today with equal force.

Williams's criminal conduct was extensive. The 3553(a) factors counsel in favor of significant punishment for extensive, violent criminal conduct, and the sentence imposed by the Court

remains appropriate when considering "the nature and circumstances of the offense" and "the need for the sentence imposed [] to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C §§ 3553(a)(1), (2)(A). Additionally, Section 3553(a)(2)(B) requires the Court to consider the need for the sentence "to afford adequate deterrence to criminal conduct." Id. § (a)(2)(B). Undoubtedly, the need for deterrence is significant in this case, given the violent nature of the Torres Organization's conduct.

Additionally, we note, as we did in the 2023 Order, that Williams, who is now 58 years old, is not yet "in an age bracket which significantly eliminates the risk of recidivism." 2023 Order at 9. Indeed, a study done by the Sentencing Commission found that the rearrest rate for men ages 50 to 59 at the time of release was 29.2%, or essentially one in three defendants in that age range. Effects of Aging on Recidivism Among Federal Offenders, Dec. 2017, at A-40. The rearrest rate jumps to 38.4% for offenders with a Criminal History Category of III, like Williams. Id. at A-44; see PSR ¶ 80. Accordingly, Williams's age does not provide any basis for a reduction in his sentence at this time.

Finally, defendant repeatedly insists that "[h]is current life sentence rests solely on a narcotics conspiracy conviction[,]" and, as a result, his life sentence is "extraordinarily long, exceedingly rare, and unjustifiable." Mot.

at 2; see also Mot. at 7 ("[Williams's] current life term stems solely from a narcotics conspiracy conviction . . . a non-violent drug offense."); Mot. at 8 (referring to Williams as a "non-violent offender."). Williams bases his position on the fact that "[t]he Court imposed determinate sentences on" the offenses other than his drug trafficking offenses, "including a ten-year sentence for conspiracy to commit murder, a five-year consecutive sentence for the firearm count, and a ten-year sentence for money laundering." Reply at 3. Thus, according to Williams, "[t]he only sentences that continue to carry custodial force today are the life sentences . . . all of which arise from drug-based racketeering and narcotics conspiracy[.]" Id.

Defendant's position, while clever, misunderstands the structure of a sentence. "A district court's sentence is based on the constellation of offenses for which the defendant was convicted and their relationship to a mosaic of facts, including the circumstances of the crimes, their relationship to one another, and other relevant behavior of the defendant." United States v. Quintieri, 306 F.3d 1217, 1227 (2d Cir. 2002). In other words, defendant's life sentence is based on the Court's consideration of all of defendant's criminal activity, taking into consideration the violent conduct of the Torres Organization at defendant's direction. As this Court noted at sentencing, "there are cases in which a defendant by his conduct forfeits his right to remain in

society. This case is one of those.” Sentencing Tr., Oct. 7, 2005 at 23:5-7. The appropriateness of Williams’s life sentence has not diminished simply because he has served the sentence specifically apportioned to a subset of his crimes.

While the Court commends Williams on his charitable contributions, educational pursuits, and recent history of good conduct, the facts and circumstances of this case do not present an extraordinary and compelling reason to reduce Williams’s sentence. Accordingly, Williams’s request for a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A) is denied.

## CONCLUSION

For the foregoing reasons, defendant’s motion is denied. The Clerk of Court is respectfully requested to terminate the motion pending at ECF No. 405.

Dated: July 29, 2026
New York, New York

[signature]
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE